**In re Bob Bates DAVENPORT, Bankrupt.**

**Bob Bates DAVENPORT, Plaintiff,**

**v.**

**Ralph FERNANDEZ, Defendant.**

**Bankruptcy No. B77–4.**

United States Bankruptcy Court, D. Vermont.

March 1, 1982.

Samuel C. FitzPatrick, Montpelier, Vt., for bankrupt-plaintiff.

Peter J. Monte, Northfield, Vt., for defendant.

## MEMORANDUM AND CONCLUSIONS

CHARLES J. MARRO, Bankruptcy Judge.

This is an adversary proceeding on the Complaint of the Bankrupt-Plaintiff to determine dischargeability in a reopened case.

In lieu of an evidentiary hearing the parties stipulated as follows:

"1. In a bankruptcy petition filed by the defendant, (sic) Bob B. Davenport, on January 6, 1977, there appears in Schedule A–3 the name of The First National Bank as a creditor as follows:

Schedule A–3
Creditors Having Unsecured Claims Without Priority

| Name of Creditor (including last known holder of any negotiable instrument) and residence or place of business (if known, so state) | Specify when claim was incurred and the consideration therefor; when claim is contingent, unliquidated, disputed, subject to setoff, evidenced by a judgment, negotiable instrument, or other writing, or incurred as partner or joint contractor, so indicate; specify name of any partner or joint contractor on any debt | Amount of Claim |
|---|---|---|
| First National Bank | 1) Promissory note co-signed with Ralph Fernandez of Northfield; undisputed | 2383.08 |
| | 2) Promissory note for purchase of Central Control Stock, dated 12 July 1976 | 5042.54 |

"2. Said Schedule A–3 lists therein, as set forth in paragraph 1 hereof, the name of Ralph Fernandez of Northfield as a co-signer. Fernandez was, in fact, an accommodation maker.

"3. Notice of the bankruptcy was given to The First National Bank.

"4. Ralph Fernandez was given no notice by mail and had no other notice of the bankruptcy before July of 1977. The bankrupt was discharged from bankruptcy on March 21, 1977.

"5. At the time of filing of bankruptcy, and subsequent to discharge of bankrupt, The First National Bank was the holder of the promissory note. Repayment of the note was secured in full by an account of Fernandez at The First National Bank. After the bankruptcy, the Bank informed Fernandez it looked to him for payment.

"6. The promissory note was paid by Ralph Fernandez in July of 1979 without demand or court action by the Bank.

"7. Thereafter, Ralph Fernandez commenced an action in the Washington Superior Court of the State of Vermont seeking to recover from the bankrupt the sum which he paid to The First National Bank as an accommodation party.

"8. Bob B. Davenport, in his answer in that action by way of affirmative defense, set forth the bar of bankruptcy and his discharge.

"9. The bankrupt has petitioned the Bankruptcy Court for reopening of his case for determination of whether or not the obligation due Ralph Fernandez is discharged by way of the aforementioned bankruptcy.

DATED at Northfield, County of Washington, and State of Vermont this 20 day of January, 1982."

Since this case was first commenced under the Bankruptcy Act, the substantive rights of the parties must be determined in accordance with the provisions of the Act as if the Bankruptcy Code had not been enacted. Title IV of Public Law No. 95–598 § 403(a).

§ 17(a)(3) of the Bankruptcy Act excepts from the operation of a discharge all provable debts which

"have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy."

As indicated in the Agreed Statement of Facts, the Defendant in this proceeding, Ralph Fernandez, was given no notice by mail and had no other notice of the bankruptcy case before July of 1977 as an accommodation maker of a note executed by the Bankrupt to the First National Bank which was secured by a bank account of Fernandez. He made payment of the note in July of 1979. Subsequently, he commenced an action in Washington Superior Court of the State of Vermont seeking to recover the payment from the Bankrupt who by way of affirmative defense set up his Discharge in Bankruptcy.

Although it does not appear in the Stipulation, the memoranda filed by the parties indicate that the Washington Superior Court granted Summary Judgment to Fernandez, in effect, ruling that the debt was not dischargeable. This judgment against the Bankrupt is pending on appeal before the Vermont Supreme Court.

The Bankrupt is now seeking to invoke the jurisdiction of the Bankruptcy Court to determine dischargeability of the debt on the grounds that it has concurrent jurisdiction with the State Court and it is a better forum for determination of dischargeability for the reason that "the Washington Superior Court is unfamiliar with the complicated forms, procedures (including the rights and duties of creditors to file proof of claim if there is knowledge of the bankruptcy within six months of the first meeting of creditors)."

■ Under the Bankruptcy Act the Bankruptcy Court has exclusive jurisdiction to determine the dischargeability of certain debts. Generally, these are liabilities for obtaining money or property by false pretenses or false representations; debts created by fraud, embezzlement, misappropriation or defalcation while the bankrupt acted as an officer or in any fiduciary capacity; and debts for willful and malicious injuries. These debts are included as exceptions under § 17(a)(2)(4)(8). As to all other § 17 debts the Bankruptcy Court has concurrent jurisdiction with the appropriate local court to determine dischargeability. Therefore, the Bankruptcy Court and the Vermont State Court (Washington Superior Court of the State of Vermont) did have concurrent jurisdiction to determine whether a debt not duly scheduled was dischargeable.

In the instant case the creditor did invoke the jurisdiction of the Washington Superior Court and this forum made a determination that the debt was not properly scheduled and, therefore, was not dischargeable.

It is true that under Rule 409(a)(1) either the bankrupt or the creditor may file a Complaint to Determine Dischargeability with the Bankruptcy Court, but it is not mandatory for either to do so. This Rule states that the Complaint "may be filed at any time." Once the Complaint is filed, another court may not oust the Bankruptcy Court of the jurisdiction, and, if the action has already been instituted in another court, it will still be possible for the bankrupt to file his Complaint in the Bankruptcy Court which could, by virtue of § 14(c)(4), stay the creditor from continuing in the original court. § 17(c)(4) provides:

"The provisions of this subdivision c shall apply whether or not an action on a debt is then pending in another court and any party may be enjoined from instituting or continuing such action prior to or during the pendency of a proceeding to determine its dischargeability under this subdivision c."

It may well be that the bankrupt cannot delay too long filing his complaint in the bankruptcy court once an action has been commenced in another forum and a bankruptcy proceeding is in progress. It would seem that the bankruptcy court could refuse to enjoin continuation of the state or federal court action on the ground of laches as applied to the bankrupt's delay. There should be some reasonable period, including time and progress of the original action as part of the determining factors, during which the bankrupt (or creditor) may file the complaint and beyond which the bankruptcy court may refuse to entertain it and this should be so despite the provision in Bankruptcy Rule 409(a)(1) that the complaint may be filed at any time. 1A Collier 14th Edition, 1679.

In this case the bankrupt did in fact delay for an unreasonable period of time to file his complaint to determine dischargeability of this particular debt. In fact, the case was closed.

It is noted that under § 17(c)(4) of the Bankruptcy Act the Court may enjoin a party from instituting or continuing an action to determine dischargeability *prior to or during the pendency of a proceeding.*

■ After the Bankrupt received his discharge on March 21, 1977, the case was closed. It was not until December 28, 1981 that the Bankrupt, after a reopening, filed his Petition to Determine Dischargeability, and this was more than seven months after the Washington Superior Court determined that the debt was dischargeable and that Fernandez was entitled to Summary Judgment. Under these circumstances, it would be grossly inequitable for the Bankruptcy Court to assume jurisdiction of the Bankrupt's Complaint to Determine Dischargeability.

The Bankrupt had his opportunity to assert the affirmative defense of discharge and was given his day in the Washington Superior Court.

■ This Court also feels that the State Court did properly determine the matter of dischargeability. It is clear under § 17(a)(3) of the Bankruptcy Act that debts which have not been duly scheduled in time for proof and allowance are not dischargeable. The emphasis is on *duly scheduled.* The requirement of duly scheduling the names and residences of creditors is an important one and has been strictly interpreted by the Courts. 1A Collier 1680, citing cases including *Salmon v. Sarno*, 265 App. Div. 114, 37 N.Y.S.2d 870 in which the Court held that in order to be discharged in bankruptcy from a debt the Bankrupt must exercise due and reasonable diligence to ascertain and properly schedule his creditor.

Fernandez was an accommodation maker of the note and as such he held a contingent debt. Under § 17 of the Bankruptcy Act all provable debts are dischargeable except those specifically mentioned in the statute. The contingent debt held by Fernandez at the time of filing of the Petition was provable. See § 63(a)(8) of the Bankruptcy Act.

Therefore, Fernandez as a contingent creditor should have been duly scheduled in the proper place in the Schedules. Over the years the Clerk of this Court has sent notices to only those creditors listed under the column "Name of creditor (including last known holder of any negotiable instrument) and residence or place of business (if unknown, so state)." It would be clearly unreasonable to put the burden on the Clerk to ferret out under an improper column the names of parties who might be contingent creditors for the purpose of sending out notices. The onus of properly scheduling rightfully belongs on the Bankrupt and not on the Clerk whose ministerial duties are burdensome enough without assuming the obligations of others in the preparation of Schedules. Therefore, this Court feels that the debt held by Fernandez was not duly

scheduled and, therefore, is non-dischargeable.