In re Martha M. BERNAL, Debtor.

EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,
Appellant,

v.

Martha M. BERNAL, Appellee.

BAP No. SC–97–1447–MORO.
Bankruptcy No. 96–05903–A7.
Adversary No. 96–90593.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted May 20, 1998.

Decided June 26, 1998.

Robert L. Rentto, San Diego, CA, for Educational Credit Management Corporation.

John Morris, Higgs, Fletcher & Mack, San Diego, CA, for Martha M. Bernal.

Before: MONTALI,[1] RUSSELL, and OLLASON, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

Educational Credit Management Corporation ("Appellant") appeals from an order denying a motion to intervene as a defendant in a student loan hardship discharge adversary proceeding and denying an alternate request for relief from entry of clerk's default. We AFFIRM.

---

1. Hon. Dennis Montali, Bankruptcy Judge for the Northern District of California, sitting by designation.

## I.

### FACTS

In 1982, 1983, 1984 and 1985, Martha M. Bernal ("Debtor") obtained four separate student loans (the "Bernal Loans") from Citibank. When Debtor filed her chapter 7 bankruptcy petition on April 30, 1996, Citibank's agent (Student Loan Corporation) submitted a claim to the California Student Aid Commission ("CSAC"), the guarantor of the loan. In July 1996, Citibank (through its agent) assigned and delivered the Bernal Loans to CSAC. CSAC and Appellant have an agreement whereby CSAC assigns its bankruptcy loan portfolio to Appellant.

. On August 6, 1996, Debtor filed her complaint to determine the nondischargeability of certain student loans. Debtor identified only two of the Bernal Loans in the text of the complaint (in the first cause of action), and the prayer requested that "on the first cause of action," the amounts owed to the Student Loan Corporation and its assigns be declared "nondischargeable." The complaint recites that in 1990, Debtor gave birth to a child with congenital muscular dystrophy; Debtor contends that in light of the permanent disability and medical costs of Debtor's . dependent, excepting the student loans from discharge would impose an undue hardship on her. A copy of the complaint and an amended summons were served by mail on August 9, 1996. The deadline for filing an answer or other response was September 9, 1996. The named defendants [2] did not respond, and Debtor filed a request to enter default on September 11, 1996. The court

clerk entered the default on September 11, 1996.[3]

On or about September 17, 1996, CSAC assigned the Bernal Loans to Appellant. Because CSAC generally transfers numerous loans to Appellant at one time, Appellant takes about one month to process the loans. On or about October 23, 1996, Appellant's legal department received the files pertaining to the Bernal Loans. Appellant filed an answer and counterclaim on October 23, 1996; in the answer, Appellant identified itself as the successor to CSAC.

The first status conference was held on February 11, 1997. The minutes from this status conference indicated that Appellant would file a motion to set aside default to be heard at the next status conference. On February 20, 1997, Appellant filed its motion to intervene and for relief from the default, although this motion did not request authority to substitute as a defendant under Fed. R.Civ.P. 25(c).[4]

Prior to the hearing, the court posted its tentative ruling:

Mtn. *denied.* ECMC [Appellant] was not a proper party in intervention at the time this cmplt. was filed. Its rights under CSAS' [CSAC's] contract with Bernal [Debtor] accrued sometime after the default was entered against CSAS [sic]. Further, relief from default denied because defaulting party (CSAS) [sic] has introduced no evidence which would excuse failure to timely answer.

After hearing oral argument, the court ruled that "the tentative shall stand."[5] The court

---

2. The named defendants included the Student Loan Corporation, CSAC, Eduserv Technologies, Inc. and Does 1–10.

3. Appellant has raised a red herring in this appeal with respect to the timing of the entry of the default by the clerk of court. Appellant implies that the court clerk back-dated the entry of default. Upon learning that a request for entry of default had been entered, both a representative of Appellant and counsel for Appellant called the court and checked the electronic docket available to the public to ascertain the status of the default in late October 1996. They allegedly determined that no default had been entered. Other than the statements of Appellant's representatives, the record contains no evidence to support a finding of back-dating by the court clerk. The court

below did not err in dismissing this contention of Appellant.

4. Federal Rule of Civil Procedure 25(c) (made applicable by Fed. R. Bankr.P. 7025) directly governs situations where a person or entity acquires an interest which is the subject of litigation after the lawsuit has been commenced. After transfer of an interest, the action may be continued against the original party, unless the court by motion orders that the transferee be substituted in the action or joined with the original party.

5. With respect to that portion of the motion seeking relief from the entry of default, the court noted that Appellant had shown neither "good

did not, however, specifically state that it would grant a default judgment at that time. Rather, the court instructed counsel for Debtor that "You are going to have to submit a declaration in support of default in order to get a default judgment. You have to basically meet the burden that you are required to meet under the student loan cases." The court entered an order denying the motion to intervene or for relief from default on May 29, 1997; the notice of appeal was timely filed on June 5, 1997.

Even though the appellate record does not contain any subsequent declarations by Debtor or Debtor's counsel in support of a default judgment, the court entered a default judgment on September 16, 1997, four months after Appellant filed its notice of appeal of the order denying the motion to intervene and to vacate the entry of default. Interestingly, the judgment purports to discharge any and all indebtedness owed by Debtor to the named defendants, even though the complaint identified only two of the four Bernal Loans and even though the prayer requested a judgment that the loans be declared "non-dischargeable." The appellate record does not indicate whether Debtor served Appellant with this default judgment.[6]

Although the relief granted in the default judgment exceeded the relief requested in the prayer of the complaint,[7] Appellant has not appealed the default judgment and it is now final.

## II.

### *JURISDICTIONAL ISSUES*

■ While denial of a motion to intervene as of right is a final order for purposes of appeal (*see Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 377, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) ("when an order prevents a putative intervenor from becoming a party in any respect, the order is subject to immediate review")), an order pertaining to the entry of default by the court clerk is interlocutory. *See Moore's Federal Practice 3d,* § 55.12[3][b] (1998); *see also Hawaii Carpenters' Trust Funds v. Stone,* 794 F.2d 508, 512 (9th Cir.1986) (neither entry of default nor conditional order setting aside the default constituted an appealable final order).

■ Under 28 U.S.C. § 158(a)(3), an appellant must obtain leave of court to appeal an interlocutory order. Appellant in this case did not do so. If an order is interlocutory, and no motion for leave to appeal has been filed, the panel can consider a timely notice of appeal to be a motion for leave. *See* Fed. R. Bankr.P. 8003(c); *Pfeiffer v. Couch (In re Xebec),* 147 B.R. 518, 522 (9th Cir. BAP 1992). Granting leave to appeal is left to the discretion of the panel. *See* 28 U.S.C. § 158(b) *Roderick v. Levy (In re Roderick Timber Co.)* 185 B.R. 601, 604 (9th

---

cause" nor "excusable neglect" sufficient to vacate the default:

> CSAC is the one that should come here with reasons as to why there should be relief from the default. And there is absolutely no information in this motion and no evidence in this motion that CSAC would be entitled to relief from the default for good cause. There is no evidence submitted by ECMC why CSAC failed to timely answer other than the fact [that the] student loan business is a large business to which I say, well, then they are going to have to be a little bit better organized.

With respect to that portion of the motion whereby Appellant sought to intervene as of right, the court stated:

> By the time ECMC [Appellant] acquired an interest in this, the default had already been entered. And the court's tentative is to deny this motion to intervene, because at the time the complaint was filed—in fact, even at the time the default was entered, ECMC [Appellant] was not a proper party in intervention.

6. Even though Appellant was not a party in the action because of the denial of the motion to intervene, service on Appellant would have been appropriate, especially where Appellant had specifically argued in its motion to intervene that any effort by Debtor to obtain a judgment broader than that prayed for would require a motion to amend the pleadings and thereby reopen the matter for an appearance by the defaulting parties.

7. The scope of the judgment may have therefore exceeded that which is permitted by Fed.R.Civ.P. 54(c) (made applicable by Fed. R. Bankr.P. 7054). Rule 54 provides that "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Debtor contends that the complaint, taken as a whole, clearly indicated her desire to discharge all of her student loans. We make no determination of that issue.

Cir. BAP 1995). In this case, granting leave to appeal is appropriate because of due process concerns.

■ Due process concerns are implicated because Appellant arguably did not have standing to appeal the final judgment. *See Stringfellow*, 480 U.S. at 378, 107 S.Ct. 1177 (in prior case, "we found that the order denying all intervention was by necessity subject to immediate review, because the applicant '[could] not appeal from any subsequent order or judgment in the proceeding.' ... In that case the party seeking to intervene had no recourse other than pretrial review, since the trial court's order terminated that party's participation in the litigation.") Without receiving leave to appeal the interlocutory order, Appellant could conceivably be denied all ability to obtain review of the denial of its motion. Consequently, granting leave to appeal is appropriate.

■ The panel must now consider whether it should dismiss the appeal as moot, in light of the subsequent final default judgment.[8] When leave to appeal an interlocutory order has been granted, the entry of a judgment final in form, purporting to resolve the issues in controversy, does not automatically render the interlocutory appeal moot and require its dismissal. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 788 F.2d 1571 (Em.App.1986). Under such circumstances, dismissal of the interlocutory appeal remains within the judicial discretion of the appellate court. In this case, the panel has decided to address the merits of the appeal.

### III.

### *ISSUES ON APPEAL*

1. Whether the bankruptcy court·erred in denying the motion for relief from the entry of default by the clerk of court with respect to the named defendants, Appellant's predecessors-in-interest.

2. Whether the bankruptcy court erred in denying Appellant's motion to intervene pursuant to Fed.R.Civ.P. 24(a) and Fed. R. Bankr.P. 7024.

### IV.

### *STANDARD OF REVIEW*

■ An order denying intervention as of right is subject to de novo review, except the question of timeliness, which is reviewed for abuse of discretion. *United States v. Oregon*, 913 F.2d 576, 587 (9th Cir.1990); *Yorkshire v. United States*, 26 F.3d 942 (9th Cir.1994), *cert. denied*, 513 U.S. 989, 115 S.Ct. 487, 130 L.Ed.2d 399 (1994); *Waller v. Financial Corp. of America*, 828 F.2d 579, 582 (9th Cir.1987). A decision to deny a motion for permissive intervention is reviewed for abuse of discretion. *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 472 (9th Cir.1992).

■ A decision on a motion to set aside entry of default is reviewed for an abuse of discretion. *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir.1994). *See also Hawaii Carpenters'*, 794 F.2d at 511–12 (decision to enter a default judgment is reviewed for abuse of discretion; the review "necessarily encompasses" the entry of default).

### V.

### *DISCUSSION*

A. *Entry of Default*

Federal Rule of Civil Procedure 55(c) (made applicable by Fed. R. Bankr.P. 7055) provides that "[f]or good cause shown the

---

8. The panel may *sua sponte* raise the issue of mootness. *Omoto v. Ruggera (In re Omoto)*, 85 B.R. 98, 99–100 (9th Cir. BAP 1988). A claim is moot if it has lost its character as a present, live controversy. *United States v. Geophysical Corp.*, 732 F.2d 693, 698 (9th Cir.1984), quoted in *American Tunaboat Assn. v. Brown*, 67 F.3d 1404, 1407 (9th Cir.1995). The panel does not have jurisdiction over a claim for which no effective relief can be granted. *Id.* Moreover, when events subsequent to the filing of an appeal moot the issues presented in the case, no justiciable controversy is presented. *Allard v. DeLorean*, 884 F.2d 464, 466 (9th Cir.1989). In this case, the subsequent default judgment is now final and vacating the default would seem to provide ineffective relief. Nevertheless, all relief is not foreclosed. If the panel were to reverse on the merits, Appellant could possibly file a motion to vacate the default judgment in the bankruptcy court. With this possible avenue of relief still available, the appeal may not be moot.

court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)". Rule 60(b) imposes the more stringent standard of "excusable neglect" for vacating a judgment.[9] At the time the motion below was heard, the default judgment had not been entered and the more lenient standard of Rule 55(c) was applicable.

■■■■■ While relief from entry of default will be granted more readily and with a lesser showing than in a case of a default judgment, the defaulting party at a minimum must show "good cause" for vacating the entry of default under Rule 55(c). *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 527–28 (11th Cir.1990). In this case, the defaulting party—CSAC—did not submit any explanation for its failure to appear and answer, even though it was still the owner of the Bernal Loans when the action was commenced and when the default was entered. As such, the defaulting party clearly failed to demonstrate "good cause" for setting aside the default. The court did not abuse its discretion in denying the request for relief from the default.

### B. *Mandatory Intervention*

■■■■ Intervention is permitted as "of right" when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." *See* Fed.R.Civ.P. 24(a)(2).

The Ninth Circuit has adopted a four-part test to resolve applications for intervention of right under Fed.R.Civ.P. 24(a)(2):

> An order granting intervention as of right is appropriate if (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action;

(3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties.

*U.S. ex rel. McGough v. Covington Technologies*, 967 F.2d 1391, 1394 (9th Cir.1992); *see also U.S. v. Oregon*, 913 F.2d at 587. In this case, Appellant cannot satisfy the fourth prong of the test; its interests were adequately represented by CSAC, the named defendant.

At the time this adversary proceeding was filed and the entry of default was obtained, CSAC held interests in the subject matter litigation that are identical to those now held by Appellant. CSAC was in a position to protect those interests merely by appearing on an interim basis and allowing Appellant to be substituted as a party defendant under Federal Rule of Civil Procedure 25(c) at a later date. It failed to do so. CSAC's unexplained failure to defend its position timely does not negate the fact that its interests were identical to those of Appellant when the case was filed and that it was in a position to protect those interests adequately.

To determine whether an original party to a private action will adequately represent the intervenor's interests, a court considers the following three factors: (1) whether the interests of the present party are such that it will make all of the arguments the intervenor would make; (2) whether the present party is capable of and willing to make such arguments; and (3) whether the intervenor would offer a necessary element to the proceedings that the other parties would neglect. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir.1983). At the time in question— the time for filing an answer—the interests of CSAC were such that it could have made all of the arguments that Appellant now would like to make. At that point, Appellant could not have offered any arguments or defenses that CSAC was unable to make. As

---

9. "While a default judgment may be vacated only by satisfying the stricter standards applied to final, appealable orders under [Rule] 60(b), an entry of default may be set aside for 'good cause shown.' " *See Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir.1990) ("The same considerations exist when deciding whether to set aside either an entry of default or a default judgment, but they are to be applied more liberally when reviewing an entry of default.").

548

such, Appellant was not inadequately protected. *See California v. Tahoe,* 792 F.2d 779 (9th Cir.1986) ("[Applicant-intervenor's] assertion, with the benefit of hindsight, that it would have argued its interests more vigorously than existing parties does not amount to a showing of inadequate representation of its interests.").

To hold that CSAC "inadequately represented" Appellant opens the floodgates to a possible abuse of the intervention doctrine by allowing parties to sleep on their rights, neglect their duties with respect to litigation, and thereafter avoid the consequences of such conduct by merely assigning the subject matter to a third party after defaulting. If the third party is allowed to acquire the subject matter and to intervene after the original defendant defaults, the third party is less likely to pursue its remedies against the truly culpable party: the defaulting assignor. At the same time, the interests of innocent plaintiffs may be jeopardized. Justice dictates that the third party be bound by the representation of the assignor in the litigation through the time of the assignment. In such circumstances, the interests of the assignor/original defendant and assignee/third party are identical. The assignee (i.e., Appellant) is adequately represented by the assignor (i.e., CSAC).

C. *Permissive Intervention*

 The bankruptcy court had "broad discretion" to grant or deny permissive intervention. *County of Orange v. Air California,* 799 F.2d 535, 539 (9th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). Here, the court did not abuse its discretion in denying the permissive intervention. In this case, the defendant is not without recourse. It can pursue whatever rights it may have against CSAC for assigning it a claim that CSAC failed to preserve and protect. Given the conclusion that Appellant's interests were adequately represented by an existing party (CSAC) and given the disruption to the judicial goal of efficiency that would result from a decision that would allow defaulting parties to escape the consequences of their misfeasance by assigning their claims to others, the court did not abuse its discretion in denying the motion for permissive intervention.

## VI.

### *CONCLUSION*

For the foregoing reasons, the panel AFFIRMS the decision below.