FERNANDEZ, Circuit Judge:
 

 Educational Credit Management Corporation (“ECMC”) appeals from the order of the Bankruptcy Appellate Panel affirming the bankruptcy court’s denial of ECMC’s motion to intervene as a defendant in an adversary proceeding in a Chapter 7 bankruptcy. The proceeding was brought by the debtor, Martha Bernal, for the purpose of discharging her student loans on the ground of undue hardship.
 
 See
 
 11 U.S.C. § 523(a)(8). We affirm.
 

 BACKGROUND
 

 Between 1982 and 1985, Bernal obtained four separate student loans from Citibank which were guaranteed by the California Student Aid Commission (“CSAC”) under the Guaranteed Student Loan Program (since renamed the Federal Family Education Loan Program).
 
 See
 
 20 U.S.C. §§ 1071 to 1087-4. Each loan was for approximately $2,500, with an interest rate of nine percent per annum.
 

 In 1990, Bernal gave birth to a daughter, who suffers from a serious illness and requires a great deal of personal care. As a result, Bernal sought and obtained several deferrals of repayment. Ultimately, she demanded cancellation of the notes, and when that was not forthcoming, she filed a Chapter 7 bankruptcy petition followed by an adversary complaint in which she asked for discharge of the debt. She claimed that a denial of discharge would “impose an undue hardship on the debtor and the debtor’s dependents.”
 
 See
 
 11 U.S.C. § 523(a)(8).
 

 Bernal’s bankruptcy petition constituted an event under the Guaranteed Student
 
 *597
 
 Loan Program. That event entitled Citibank to call on the guarantee of CSAC, so on July 15, 1996, Citibank assigned and delivered the four notes to CSAC. On August 6, 1996, Bernal filed the adversary complaint against CSAC, and others, to determine the nondischargeability of her student loans. A copy of the complaint and an amended summons were served on CSAC on August 9, 1996. The deadline for filing an answer or other response was September 9, 1996. CSAC did not respond to the complaint, and on September 11,1996, Bernal filed a request for entry of default, which was duly entered on the same day. Then, on September 17, 1996, CSAC assigned and transferred the four notes to ECMC. The transfer was accomplished through delivery of data processing tapes, and the information from the tapes was then loaded into ECMC’s system in a process that took approximately one month to complete. Thus, ECMC’s attorneys did not receive the Bernal files until October 23, 1996, but they filed a purported answer and counterclaim to the adversary complaint on that same day, even though ECMC was not a party at that time.
 

 On February 20, 1997, ECMC filed a motion to intervene in the adversary proceeding and to set aside CSAC’s default. The bankruptcy court denied that motion because, as it explained, “at the time the complaint was filed — in fact, even at the time the default was entered, ECMC was not a proper party in intervention.” ECMC then appealed to the BAP, but a default judgment was entered by the bankruptcy court at a later time. The BAP affirmed the denial of intervention.
 
 See Educational Credit Management Corp. v. Bernal (In re Bernal),
 
 223 B.R. 542 (9th Cir. BAP 1998)
 
 (ECMC I).
 
 This appeal followed.
 

 JURISDICTION AND STANDARDS OF REVIEW
 

 The BAP had jurisdiction pursuant to 28 U.S.C. § 158(c), and we have jurisdiction pursuant to 28 U.S.C. § 158(d).
 
 [1]
 

 “We review decisions of the BAP
 
 de novo.” Classic Auto Refinishing, Inc. v. Marino (In re Marino),
 
 181 F.3d 1142, 1144 (9th Cir.1999). In other words, “[w]e review the bankruptcy court’s decision independently, without deference to the BAP.”
 
 Beaupied v. Chang (In re Chang),
 
 163 F.3d 1138, 1140 (9th Cir.1998),
 
 cert. denied
 
 526 U.S. 1149, 119 S.Ct. 2029, 143 L.Ed.2d 1039 (1999). “The bankruptcy court’s conclusions of law are reviewed de novo and its factual findings for clear error.”
 
 Ardmor Vending Co. v. Kim (In re Kim),
 
 130 F.3d 863, 865 (9th Cir.1997).
 

 DISCUSSION
 

 As we have already indicated, the BAP affirmed the bankruptcy court’s decision that intervention was not appropriate. In so doing, it concerned itself with whether ECMC met the elements required of a party which seeks to intervene as of right.
 
 See ECMC I,
 
 223 B.R. at 547-48. It went on to consider whether it was proper for the bankruptcy court to deny permissive intervention.
 
 Id.
 
 at 548. As we see it, the conclusion it reached was correct, but for somewhat different reasons.
 

 ECMC’s whole quest to obtain intervention
 
 [2]
 
 and joinder
 
 [3]
 
 in the adversary proceeding was misguided. It was neither a third party which had some interest in property that might somehow be impaired if it could not intervene,
 
 see
 
 Fed.R.Civ.P. 24, nor a party whose interest would some
 
 *598
 
 how be impaired, if those who were before the court proceeded without it.
 
 See
 
 Fed. R.Civ.P. 19. As the BAP recognized, to treat ECMC as falling within either of those categories would produce great mischief. The BAP reasoned that permitting intervention would:
 

 [open] the floodgates to a possible abuse ... by allowing parties to sleep on their rights, neglect their duties with respect to litigation, and thereafter avoid the consequences of such conduct by merely assigning the subject matter to a third party after defaulting. If the third party is allowed to acquire the subject matter and to intervene after the original defendant defaults, the third party is less likely to pursue its remedies against the truly culpable party: the defaulting assignor. At the same time, the interests of innocent plaintiffs may be jeopardized. Justice dictates that the third party be bound by the representation of the assignor in the litigation through the time of the assignment.
 

 ECMC I,
 
 223 B.R. at 548.
 

 That reasoning, however, points to the fact that the whole procedure, including the standards that surrounded it, was in-apposite. This is a classic situation where the rules for substitution of parties must apply.
 
 See
 
 Fed. R. Bankr.P. 7025(c); Fed. R.Civ.P. 25(c). Federal Rule of Bankruptcy Procedure 7025 simply adopts Federal Rule of Civil Procedure 25(c) by reference. The latter reads: “In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.” The rule focuses on what was really going on in this case, and is designed to cope with that. As the Fifth Circuit has said, “Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands.”
 
 Collateral Control Corp. v. Deal (In re Covington Grain Co., Inc.),
 
 688 F.2d 1362, 1364 (5th Cir.1981). And a leading treatise has underscored that by stating:
 

 The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee’s presence would facilitate the conduct of the litigation.
 

 7C Charles Alan Wright, Arthur R. Miller
 
 &
 
 Mary Kay Kane, Federal Practice and Procedure § 1958 (2d Ed.1986) (footnote omitted) (hereafter Wright § 1958).
 

 The rule, therefore, assures that the concerns which troubled the BAP will remain under the firm control of the trial court because it leaves the substitution decision to that court’s sound discretion.
 
 See, e.g., Dodd v. Pioche Mines Consol., Inc.,
 
 308 F.2d 673, 674 (9th Cir.1962) (the decision is discretionary);
 
 Sun-Maid Raisin Growers v. California Packing Corp.,
 
 273 F.2d 282, 284 (9th Cir.1959) (same);
 
 cf. McComb v. Row River Lumber Co.,
 
 177 F.2d 129, 130 (9th Cir.1949) (same at the appellate level). It is not an area where we review de novo on the theory that a party who seeks substitution can obtain it as of right.
 
 See Donnelly v. Glickman,
 
 159 F.3d 405, 409 (9th Cir.1998) (denial of intervention as of right reviewed de novo);
 
 UOP v. United States,
 
 99 F.3d 344, 347 (9th Cir.1996) (mandatory joinder issue reviewed de novo, although joinder decision generally reviewed for abuse of discretion).
 

 There is nothing mysterious about what happened in this case. When litigation was commenced, the notes in question were owned by CSAC, and that was even true when the default was entered. ECMC was not even in the picture as far as Bernal and the bankruptcy court were concerned. Only at a later time were the notes, and any possible rights under them,
 
 *599
 
 transferred to ECMC. That was, therefore, the very paradigm of an assignment controlled by Rule 25(c), and ECMC was bound by what had gone on before. To slightly paraphrase what the Fifth Circuit said over 50 years ago, when it was faced with a similar attempt to wriggle out of a situation created by an assignor:
 

 [ECMC] ignores the undisputed fact of record that [it] was not a party to the original suit, but acquired whatever rights it may have in the property, if any, only by virtue of the assignment from [CSAC], and must therefore stand in [its] shoes with respect to all phases of the litigation. The fact that [CSAC’s] litigation may have impaired or adversely affected the rights of [ECMC] under the assignment would not justify our disturbing all prior orders and decrees entered in this controversy and unfavorable to [ECMC] which were binding upon [CSAC] ... when made.
 

 Deauville Assoc. v. Murrell,
 
 180 F.2d 275, 277 (5th Cir.1950).
 

 ECMC, it seems, does not wish to confront the default by CSAC or attempt to explain that default. At least it has never attempted to do so in this proceeding. Rather, it has intoned a monody about how difficult it was for ECMC to proceed in a timely fashion. That is all well and good, if unimpressive.
 
 [4]
 
 Nevertheless, it does not even begin to explain why CSAC, its predecessor, allowed its default to be taken, and
 
 that
 
 is what ECMC would have to do were it allowed to substitute into this action now that it has been assigned CSAC’s rights. It made no attempt to show that its presence would “facilitate the conduct of the litigation.” Wright § 1958 at 557. The bankruptcy court did not abuse its discretion.
 

 CONCLUSION
 

 Bernal, a debtor in distress, brought an adversary action to obtain her discharge. CSAC then gutted its own case by allowing its default to be taken. We cannot engage in extispicy to divine just why it did so, and neither it nor ECMC has chosen to enlighten us. Nor need we scry in an attempt to discover the hidden answer.
 

 If ECMC could make use of Federal Rules of Civil Procedure 19 and 24, the answer could remain hidden because, as it sees it, there would be no need to explain the default. ECMC cannot do that. We hold that the proper procedure was a motion brought under Federal Rule of Civil Procedure 25(c) and addressed to the discretion of the bankruptcy court. ECMC never sought to utilize that procedure, and it failed in its attempt to ensorcel the bankruptcy court into granting 25(c)— evading relief. Just as it failed there, it must fail here.
 

 AFFIRMED.
 

 [1]
 

 .To the extent that we are asked to review the entry of the default itself, we cannot do so because we do not have jurisdiction.
 
 See Stanley v. S.S. Retail Stores Corp. (In re S.S. Retail Stores Corp.),
 
 162 F.3d 1230, 1232 (9th Cir.1998);
 
 Hawaii Carpenters’ Trust Funds v. Stone,
 
 794 F.2d 508, 512 (9th Cir.1986).
 

 [2]
 

 .
 
 See
 
 Fed. R. Bankr.P. 7024; Fed.R.Civ.P. 24.
 

 [3]
 

 .
 
 See
 
 Fed. R. Bankr.P. 7019; Fed.R.Civ.P. 19.
 

 [4]
 

 . As the bankruptcy court said, if the "student loan business is a large business ... well, then, they are going to have to be a little bit better organized.”