In re Patrick B. GARMHAUSEN, Debtor.

Patrick B. Garmhausen,

v.

Sallie. Mae Servicing Corporation and U.S. Department of Education.

Bankruptcy No. 800–84434–511.
Adversary No. 800–8353–511.

United States Bankruptcy Court,
E.D. New York.

March 30, 2001.

---

Michael E. Walter, Port Jefferson, NY, for debtor.

### MEMORANDUM DECISION AND ORDER

(Motion for Default Judgment and Cross–Motion Seeking Intervention)

MELANIE L. CYGANOWSKI, Bankruptcy Judge.

#### Background

Patrick B. Garmhausen (the "Debtor") commenced this bankruptcy case by filing

a petition seeking relief under Chapter 7 on June 30, 2000. Among the debts that he sought to discharge were two student loans: one with Sallie Mae Servicing Corporation ("Sallie Mae") and one with the United States Department of Education. For this reason, the Debtor commenced the above-captioned adversary proceeding on September 1, 2000, naming these parties as defendants.

Pursuant to Fed. R. Bankr.P. 7004, the Debtor served the summons and complaint upon the named defendants on September 11, 2000. Answers were required to be filed by Sallie Mae on or before October 1, 2000 and by the United States on or before November 17, 2000.[1] The United States timely filed an answer to the complaint on October 27, 2000. To date, Sallie Mae has not appeared in this adversary proceeding and has not filed an answer.

On October 27, 2000, the Debtor filed a motion seeking the entry of a default judgment as against Sallie Mae. The motion was made by "notice of presentment" and required objections to be filed by November 29th, in which event, a hearing was scheduled to be held on December 4, 2000. Sallie Mae did not file any objections to the motion.

Prior to the date of presentment, however, the New York State Higher Education Corporation ("HESC") filed an affirmation in opposition to the Debtor's motion for a default judgment. HESC also filed an "Order Allowing HESC to Intervene as a Party Defendant." The Court considered these papers to be "objections" to the Debtor's motion for a default judgment and, accordingly, scheduled a hearing to take place on December 4, 2000. Sallie Mae did not appear at the December 4th hearing; HESC did.

In its opposition, HESC alleges that it guaranteed the student loans disbursed to the Debtor by Sallie Mae. It further alleges that, after the Debtor commenced this adversary proceeding on September 1st and in accordance with "federal regulations" (which are neither referenced in specificity nor annexed), Sallie Mae filed a claim with HESC on September 15th which caused HESC to purchase the loans from Sallie Mae on September 30th.

In support of its motion to intervene, HESC argues that it is an "indispensable party" to this litigation for two reasons. First, it argues that since it has been the guarantor of the loans at all relevant times, it is the "governmental unit" referred to in § 523(a)(8). Secondly, since September 30th, it claims to be the current owner of the loans. Therefore, HESC requests that it be granted the opportunity to intervene as a party-defendant and that the Debtor's motion for a default judgment be denied.

For his part, the Debtor stands firm in asserting that he served the proper party—namely, Sallie Mae. The Debtor rightly points out that even HESC admits that Sallie Mae was the owner of the student loans on the date on which the adversary proceeding was commenced and, as such, remains the proper and necessary party to be served in this action. The Debtor further argues that, upon purchasing the subject loans from Sallie Mae on September 30th, HESC now "stands in the shoes of Sallie Mae" and should be treated no dif-

---

1. The disparity in dates arose because the Debtor twice requested that the Court issue a supplemental summons for service upon the United States. This was done on October 2, 2000 and October 18, 2000, and the Debtor served the same, together with the complaint, on the United States on October 11, 2000. Pursuant to FRBP 7012, the United States has 35 days from the date of issuance of the supplemental summons to file an answer and respond to the complaint.

ferently than any bank or other party that takes an assignment of loan from another bank. For this reason, the Debtor contends that, as the assignee of Sallie Mae's claim against the Debtor, HESC should now be considered the defendant in place of Sallie Mae and that HESC must bear the consequences of Sallie Mae's negligence in failing to appear and answer the summons and complaint.

### Discussion

#### 1. The Pending Motions

Neither party cited any case law to the Court. After hearing oral argument at the December 4th hearing, the Court reserved decision and undertook its own research of the issues presented. The decision by the Court of Appeals for the Ninth Circuit in *In re Bernal,* 207 F.3d 595 (9th Cir.2000), is on point. Applying the *Bernal* rationale to this case, the Court agrees with the Debtor that he should be granted a judgment by default as against Sallie Mae and that HESC's motion to intervene should be denied.

In the *Bernal* case, there were four student loans from Citibank which were guaranteed by the California Student Aid Commission ("CSAC") under the Guaranteed Student Loan Program. *Bernal,* 207 F.3d at 596. The debtor in *Bernal* filed an adversary proceeding against CSAC and others, seeking discharge of the student loans under 11 U.S.C. § 523(a)(8). Much like the circumstances here, Citibank assigned and delivered the notes to CSAC after the bankruptcy case was commenced. But unlike the circumstances here, the assignment to CSAC took place before the adversary proceeding was filed. *Id.*

Despite being the holder of the notes at the time of being served with the *Bernal* complaint in the adversary proceeding, CSAC did not respond or appear. The *Bernal* debtor filed a request for entry of

default, which was thereupon entered by the Court. *Id.* at 597. After entry of the default, CSAC assigned and transferred the notes to the Educational Credit Management Corporation ("ECMC"). Approximately one month after the default, ECMC filed an answer and counterclaim in the adversary proceeding, even though it was not named as a party at that time in the *Bernal* case. Approximately five months later, ECMC filed a motion to intervene in the adversary proceeding and to set aside the default judgment against CSAC. *Id.*

The *Bernal* bankruptcy court denied ECMC's motions, explaining that "at the time the complaint was filed—in fact, even at the time the default was entered, ECMC was not a proper party in intervention." *Id.* ECMC then appealed to the Bankruptcy Appellate Panel for the 9th Circuit, which affirmed the denial of intervention. *See Educational Credit Management Corp. v. Bernal,* 223 B.R. 542 (9th Cir. BAP 1998). The appeal to the United States Court of Appeals for the Ninth Circuit then followed.

In considering the decision by the BAP, the Ninth Circuit determined that "the conclusion it reached [to deny intervention] was correct, but for somewhat different reasons." *Id.,* 207 F.3d at 597. The Court then elaborated, more fully, as follows:

> ECMC's whole quest to obtain intervention and joinder in the adversary proceeding was misguided. It was neither a third party which had some interest in property that might somehow be impaired if it could not intervene, *see* Fed.R.Civ.P. 24, nor a party whose interest would somehow be impaired, if those who were before the court proceeded without it. *See* Fed.R.Civ.P. 19. As the BAP recognized, to treat ECMC as falling within either of those categories would produce great mischief. The

BAP reasoned that permitting intervention would:

> [open] the floodgates to a possible abuse . . . by allowing parties to sleep on their rights, neglect their duties with respect to litigation, and thereafter avoid the consequences of such conduct by merely assigning the subject matter to a third party after defaulting. If the third party is allowed to acquire the subject matter and to intervene after the original defendant defaults, the third party is less likely to pursue its remedies against the truly culpable party: the defaulting assignor. At the same time, the interests of innocent plaintiffs may be jeopardized. Justice dictates that the third party be bound by the representation of the assignor in the litigation through the time of the assignment.

*ECMC I*, 223 B.R. at 548.

That reasoning, however, points to the fact that the whole procedure, including the standards that surrounded it, was inapposite. *This is a classic situation where the rules for substitution of parties must apply. See* Fed. R. Bankr.P. 7025(c); Fed.R.Civ.P. 25(c).

*Bernal, supra,* 207 F.3d at 598 (emphasis added; footnotes omitted).

Relying upon a decision by the Fifth Circuit in *Deauville Assoc. v. Murrell,* 180 F.2d 275, 277 (5th Cir.1950), the *Bernal* Court concluded that ECMC "was bound by what had gone on before." Paraphrasing the *Deauville Associates* holding, the *Bernal* Court wrote:

> [ECMC] ignores the undisputed fact of record that [it] was not a party to the original suit, but acquired whatever rights it may have in the property, if any, only by virtue of the assignment from [CSAC], and must therefore stand in [its] shoes with respect to all phases of the litigation. The fact that [CSAC's]

litigation may have impaired or adversely affected the rights of [ECMC] under the assignment would not justify our disturbing all prior orders and decrees entered in this controversy and unfavorable to [ECMC] which were binding upon [CSAC] . . . when made.

207 F.3d at 598. The Ninth Circuit further observed that ECMC had not, at any time during the arguments presented, attempted to explain the default by CSAC. *Bernal,* 207 F.3d at 598–99. At best, ECMC argued that it was difficult for it to proceed in a timely fashion. The Court rejected this argument, describing it as "unimpressive." 207 F.3d at 599.

The circumstances here are almost identical to those presented in *Bernal.* Like the *Bernal* case, this too is a classic case where HESC should be seeking to *substitute* itself for Sallie Mae as opposed to seeking to *intervene* as a party defendant. As in *Bernal,* HESC was at the outset of the case nothing more than the guarantor of the notes; it did not own the notes until it purchased them from Sallie Mae on September 30, 2000. Upon the transfer of interest, HESC had the right to step into the shoes of Sallie Mae and continue the prosecution of its defense.

Federal Rule of Bankruptcy Procedure 7025 adopts the provision of Federal Rule of Civil Procedure 25, which reads in pertinent part:

> (c) In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as

provided in subdivision (a) of this rule.

As a leading treatise explains,

> The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation.

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1958 (2d Ed.1986); *see also Bernal*, 207 F.3d at 598.

■ As the Ninth Circuit notes in *Bernal*, there is nothing that is "mysterious" about what happened in that case; nor is there anything that is "mysterious" here. At the time that the adversary proceeding was commenced by the Debtor on September 1, 2000, the notes were owned by Sallie Mae. The notes were thereafter transferred to HESC. There is no good reason why HESC should not be "bound by what had gone on before" its acquisition of Sallie Mae's interest. *Bernal*, 207 F.3d at 598.[2] In this case, Sallie Mae defaulted and HESC must bear the consequences of this default. At no time has HESC offered any excuse for the failure of Sallie Mae to answer the complaint or seek an extension of the time within which to do so. In the absence of any explanation as to why Sallie Mae defaulted, the Court grants the application for entry of a default judgment as against it.

■ HESC's motion to intervene must be denied for the same reasons set forth in *Bernal*: it is not a third party which had some interest in the case at the time of commencement that might somehow be impaired if it could not intervene, *see* FRCP 24, nor is it a party whose interest would somehow be impaired if those who were before the court proceeded without it, *see* FRCP 19. The fact that HESC is a "governmental unit", even if the one referred to within § 523(a)(8), is not relevant to this inquiry. The fact that HESC has been the guarantor of the loans at all relevant times does not enable it to satisfy the strictures of FRCP 24 or FRCP 25.

### 2. Dischargeability of the HESC Guaranty Obligation

■ The above discussion does not end the inquiry, however, as neither party has addressed the significance of the undisputed fact that HESC guaranteed the underlying obligation to Sallie Mae. In other words, HESC holds two claims at this stage of the litigation: (a) it owns the assignment of the claim that it purchased from Sallie Mae (after the adversary proceeding was commenced), *and* (b) it is and, at all relevant times, has been, the guarantor of the debt owing to Sallie Mae. These are two distinct obligations and the mere fact that HESC now holds both of them does not transform them into one.

■ As a guarantor, HESC is the holder of a contingent claim against the debtor and, as such, is a creditor in its own

---

2. In the case at bar, the adversary proceeding is at the early stages of litigation. If the motion to intervene were granted, there would be no prejudice to the other parties in the litigation insofar as discovery and other pretrial motions are concerned. But, if HESC's argument were accepted, it could theoretically happen that a motion to intervene might be brought at the middle or end of the litigation. Under HESC's rationale, the Court would be compelled to permit a third-party assignee to step in as an additional party, without fear of being burdened by any earlier rulings in the case. Such a scenario is not only troubling but inconsistent with FRCP 25(c).

right which should have received notice of the debtor's petition. More significantly, HESC in its capacity as guarantor is *not* bound by the default judgment entered against Sallie Mae on the underlying obligation. *United States v. Erkard,* 200 B.R. 152, 154 (N.D.Ohio 1996). It remains necessary for the plaintiff to not only amend his schedules to reflect the contingent debt owing to HESC but also seek a determination of dischargeability with respect to this creditor. *Id.; see also In re Davenport,* 18 B.R. 491, 494 (Bankr.D.Vt.1982).

### Conclusion

Accordingly, for these reasons, the plaintiff may settle a judgment by default as against Sallie Mae by serving the same upon Sallie Mae and HESC. HESC's motion to intervene as the party-defendant in lieu of Sallie Mae is denied. Plaintiff has 30 days within which to amend his schedules and his complaint to add HESC as a party-defendant in its capacity as guarantor of the underlying debt. In the event the plaintiff fails to do so, the adversary proceeding will be closed.

SO ORDERED.