*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0063p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re: THOMAS J. ALFES,

　　　　　　　　　　　　*Debtor.*
_____

THOMAS J. ALFES,

　　　　　　　　　　　　*Appellant,*

　　　　*v.*

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,

　　　　　　　　　　　　*Appellee.*

No. 11-2159

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-14610—Marianne O. Battani, District Judge.

Argued: July 20, 2012

Decided and Filed: March 12, 2013

Before: BOGGS and WHITE, Circuit Judges; BLACK, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Larry J. Saylor, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Detroit, Michigan, for Appellant. Adam C. Trampe, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, Oakdale, Minnesota, for Appellee. **ON BRIEFS:** Larry J. Saylor, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Detroit, Michigan, Michael D. Lieberman, LIEBERMAN, GIES & COHEN, PLLC, Farmington Hills, Michigan, for Appellant. Adam C. Trampe, A.L. Brown, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, Oakdale, Minnesota, for Appellee.

_____

[*] The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

1

———————————

## OPINION

———————————

HELENE N. WHITE, Circuit Judge.  Thomas J. Alfes appeals the district-court judgment affirming the bankruptcy court's order granting summary judgment in favor of Educational Credit Management Corporation (ECMC).  We AFFIRM.

### I.

Between 1982 and 1997, Alfes took out student loans funded in whole or in part by the Federal Family Education Loan Program (FFELP).  Alfes consolidated his student-loan debt and, on the final consolidation, SunTrust Bank (SunTrust) was the lender and obligee on the consolidated note (Note) and the Pennsylvania Higher Education Assistance Agency (PHEAA) was the guarantor.  Alfes filed a petition for relief under Chapter 7 of the Bankruptcy Code in May 2005, and the bankruptcy court entered a general discharge of Alfes's debts on September 30, 2005.

Subsequently, Alfes initiated an adversary proceeding seeking a declaration that the debt under the Note had been discharged, naming both SunTrust and PHEAA as defendants.  Alfes's complaint alleged that because the student loans had been consolidated, the Note no longer constituted an "educational loan" under 11 U.S.C. § 523(a)(8)(A) and therefore had been discharged with his ordinary debt.[1]

Both SunTrust and PHEAA failed to timely answer or otherwise respond to Alfes's complaint.  SunTrust assigned its interest under the Note to PHEAA on October 28, 2005.  The bankruptcy court entered a default judgment against SunTrust on November 18, 2005, ordering "the relief sought in [Alfes's] complaint that [SunTrust's] claim against [Alfes] is dischargeable."

---

[1]The Bankruptcy Code, 11 U.S.C. § 523(a)(8)(A)(i), states, "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for . . . an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution."

In the interim, ECMC filed a motion to substitute for PHEAA and answered Alfes's complaint on October 26, 2005. ECMC's motion for substitution stated that PHEAA had transferred the Note to ECMC and that ECMC was therefore the real party in interest. ECMC's answer stated that "[Alfes] is indebted to ECMC for educational loans made to [Alfes] by ECMC's predecessor in interest, various banks and governmental guarantors." However, PHEAA's transfer to ECMC did not actually occur until weeks later on December 2, 2005, a fact the parties did not learn until December 7, 2005.

In the interim, on December 5, the bankruptcy court denied ECMC's motion to substitute for lack of standing. PHEAA immediately filed an answer to Alfes's complaint to avoid an entry of default, but the bankruptcy court clerk had entered a default against PHEAA the same day.

On December 8, ECMC filed a second motion to substitute and PHEAA filed a motion to set aside the entry of default. The bankruptcy court entered a default judgment against PHEAA on December 9, 2005, and closed the bankruptcy case on January 4, 2006.

On January 23, 2006, the bankruptcy court reopened the adversary proceeding and granted PHEAA's motion to set aside the default judgment. The court entered a stipulated order substituting ECMC for PHEAA on February 17, 2006. On ECMC and Alfes's cross-motions on the issue whether consolidation loans are "educational loans" under 11 U.S.C. § 523(a)(8), the bankruptcy court denied Alfes's motion for summary judgment and granted ECMC's motion to dismiss on April 17, 2006, concluding that a holder of consolidated student loans is an educational lender for the purposes of 11 U.S.C. § 523(a)(8)(A) and that the consolidated loan was therefore nondischargeable absent a showing of undue hardship. Alfes did not appeal that decision.

ECMC transferred the Note back to SunTrust, which, through its servicer American Education Services (AES), resumed collection on the Note. Alfes refused to pay, asserting that the debt had been discharged by the default judgment against SunTrust.

On December 18, 2008, Alfes filed a motion to reopen the adversary proceeding, arguing that AES was bound by the default judgment against SunTrust and was therefore enjoined from collecting on the Note. Alfes sought entry of a new order prohibiting SunTrust, or any future successor in interest, from collecting on the Note, sanctions for AES/SunTrust's "knowing and intentional violation" of the November 18, 2005, discharge order, and attorney's fees.

SunTrust transferred the Note back to ECMC for the purpose of defending against Alfes's claims, and PHEAA, ECMC, and SunTrust filed a joint response to Alfes's motion to reopen on January 20, 2009, arguing, *inter alia*, that student-loan guarantors have claims that are "separate and distinct" from those received by assignment from student-loan lenders. Therefore, they argued, the default judgment against SunTrust as lender did not bind PHEAA and ECMC in their capacity as guarantors.

On October 15, 2009, the bankruptcy court granted Alfes's motion to reopen the adversary proceeding and set a hearing date on the issue of damages. No hearing was held, however, because the parties informed the court that they were in settlement negotiations.

In or around May of 2010, the parties entered into a confidential settlement agreement under which Alfes agreed to limit his claim against SunTrust to costs and attorney's fees and, in exchange, ECMC agreed that any further claims regarding Alfes's remaining obligation under the Note, "regardless of the theory of liability and regardless of whether such claim arises under the promissory notes, guaranty, or otherwise, shall be brought on or before May 17, 2010."

On May 17, 2010, ECMC filed a complaint seeking a declaratory judgment that the debt was nondischargeable by virtue of the April 17, 2006, judgment in its favor, thereby initiating a second adversary proceeding. On May 18, ECMC filed an amended complaint, which, while largely identical to the May 17 complaint, further clarified

PHEAA/ECMC's rights as guarantor under the Note.**2** Alfes moved to dismiss the amended complaint, arguing that it added a new claim and should have been barred by the settlement agreement's May 17, 2010, deadline. The bankruptcy court denied Alfes's motion, holding that the amended complaint related back because it did not assert "any substantively different claim" and did not result in unfair surprise to Alfes. The bankruptcy court's order denying Alfes's motion to dismiss the amended complaint ordered the parties to file cross-motions for summary judgment.

In August 2010, the parties filed cross-motions for summary judgment, Alfes arguing that the default judgment against SunTrust should bar, as *res judicata*, ECMC's nondischargeability claim, and ECMC arguing that the later dismissal order in its favor should bar Alfes's claim and that the default judgment against SunTrust could not bind PHEAA/ECMC in their capacity as guarantors. The bankruptcy court granted ECMC's motion, holding that its April 17, 2006 order granting PHEAA/ECMC's motion to dismiss for failure to state a claim had preclusive effect because that order was a final decision on the merits, the current action was between the same parties, and the issue before it, i.e., whether Alfes's debt to ECMC was dischargeable, had been litigated. Further, the bankruptcy court held that the earlier default judgment against SunTrust did not bar ECMC's claim because SunTrust was not a party in the second adversary proceeding. The court did not address ECMC's argument that it had "separate and distinct" rights as guarantor.

On appeal, the district court affirmed the bankruptcy court's denial of Alfes's motion to dismiss ECMC's May 18 amended complaint and affirmed that the April 17, 2006 final judgment in favor of ECMC was an absolute bar to Alfes's claims in the second adversary proceeding. Regarding the amended complaint, the district court observed that because the Federal Rules of Civil Procedure apply in bankruptcy

---

**2**The original (May 17) complaint alleged that PHEAA, as ECMC's predecessor in interest, had purchased the Note from SunTrust in October of 2005. The amended (May 18) complaint revised this allegation to say that PHEAA had purchased the Note from SunTrust under the guaranty agreement. The amended complaint added the allegation that the November 18, 2005, default judgment against SunTrust should not control, as SunTrust never held any guarantor interest in the Note, and that SunTrust did not hold any interest in the Note at the time of the default judgment.

adversary proceedings, a party may amend its pleading once as a matter of course and the amendment will relate back to the date of the original complaint provided the claim arises out of the same "conduct, transaction, or occurrence." The district court concluded that ECMC properly availed itself of this rule and noted that Alfes knew the bases of ECMC's claims and was not prejudiced by the amendment. On the application of *res judicata*, the district court held that although the November 18, 2005 default judgment was binding with respect to SunTrust, the bankruptcy court later set aside the default judgment against PHEAA, and that ECMC, after its substitution, successfully litigated on the merits. Additionally, the district court noted that Alfes did not appeal the bankruptcy court's judgment in favor of ECMC, and that "the time for Alfes[] to challenge that final order has long since passed."

Alfes timely appealed.

## II.

When reviewing appeals originating in bankruptcy courts, "we directly review the bankruptcy court's decision rather than the district court's review of the bankruptcy decision. *See In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607 (6th Cir. 2000). We review the bankruptcy court's factual findings for clear error and its conclusions of law *de novo. Id.* In the present case, the facts are not disputed, and this appeal presents pure questions of law that we review *de novo.* Further, "[b]ecause this court's de novo review involves only application of legal propositions to the undisputed facts in the record, we may affirm on any grounds supported by the record even if different from the reasons of the district court." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). The bankruptcy court's application of *res judicata* is a question of law we review *de novo. See Bates v. Twp. of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006).

## A. ECMC's Claims as Guarantor

Alfes argues that because his debt under the Note was discharged by the default judgment against SunTrust, *res judicata* barred ECMC as the assignee of SunTrust's

interest from relitigating the issue of dischargeability, and the bankruptcy court thus erred in denying his motion for summary judgment. This argument misses the mark.

ECMC concedes that whatever interest it acquired from SunTrust through Suntrust's assignment in the capacity of lender is limited by the 2005 default judgment against SunTrust. Instead, ECMC argues that it retains a valid interest under the Note in its capacity as guarantor, which it acquired by assignment from PHEAA and upon substitution in the first adversary proceeding. The guaranty interest under the Note is "separate and distinct" from the interest held by SunTrust as lender. Thus, the primary question on appeal concerns the scope of PHEAA/ECMC's remaining interest in its "separate and distinct" capacity as guarantor, and whether the default judgment against SunTrust discharged that interest so as to extinguish ECMC's rights acquired by assignment from PHEAA.

### 1. Guarantor rights in bankruptcy proceedings

Alfes argues that under the laws of guaranty, the principal relationship under a note is that between the borrower and lender, and any guaranty rights are established in a separate contractual relationship between the lender and the guarantor. Therefore, Alfes claims, PHEAA/ECMC, in its capacity as third-party guarantor, has no interest under the Note between Alfes and SunTrust, *i.e.*, PHEAA did not have, and could not assign to ECMC, the right to defend the Note. Rather, Alfes contends, ECMC may only assert claims for reimbursement, restitution, and subrogation, which do not arise under the Note.

Alfes's argument fails to recognize the independent rights a guarantor may assert under bankruptcy law. It is well-settled that when a debtor successfully obtains a discharge through bankruptcy, the guarantor holds a "claim against the debtor, and as such, [is considered] a creditor" for the purposes of bankruptcy proceedings. *United States v. Erkard*, 200 B.R. 152, 154 (N.D. Ohio 1996). *See also In re H & S Transp. Co.*, 939 F.2d 355, 359 (6th Cir. 1991) (holding that the "guarantor of debtor's loan is a 'creditor' by virtue of his right to reimbursement from debtor."); 5-547 Collier on Bankruptcy ¶ 547.03 ("The guarantor holds a contingent claim against the debtor that

becomes fixed when the guarantor pays the creditor whose claim was guaranteed or insured."). The bankruptcy court's initial discharge of Alfes's debt stated that creditors are not prohibited from collecting on nondischargeable debt, which includes "[d]ebts for most student loans." Because a guarantor is a "creditor" for the purpose of bankruptcy actions, guarantors of debt held by lenders also have a right to collect on and defend the nondischargeability of a note in bankruptcy proceedings.

*Erkard* is particularly instructive. There, the debtor-defendant's educational loans were purchased by a private lender. After the debtor received a general discharge order, the lender filed a claim with the guarantor, the U.S. Department of Health and Human Services, which paid the outstanding debt in return for assignment of the note. The debtor initiated an adversary proceeding against the lender seeking a discharge of the educational loans. The lender failed to answer, and the bankruptcy court entered a default judgment and ordered the loan discharged. The United States was never added as a party.

The United States brought an action seeking repayment from the debtor. The debtor defended on the basis that the default judgment entered against the lender had discharged the debt, precluding the United States from collecting on the note as guarantor. The *Erkard* court observed that upon payment on the guaranty and assignment of the note, the United States held two parallel claims on the outstanding debt: "[T]he United States became a creditor . . . based on its status as assignee of the notes, this being in addition to its preexisting status as a creditor based upon its position as the guarantor of the same notes." *Erkard*, 200 B.R. at 153. The court held that "[a]t all times relevant to the proceedings in bankruptcy, the United States was the guarantor of the notes held by [the lender]. As a guarantor, the United States was a holder of a contingent claim against the debtor and, as such, was a creditor entitled to notice of the debtor's bankruptcy petition." *Id.* at 154. The court concluded that the United States, as guarantor of the note, held an independent contingent claim against the debtor notwithstanding the default judgment entered against the lender. *Id.*

In the present case, PHEAA, like the United States in *Erkard*, was at all times a guarantor of the Note held by SunTrust. PHEAA was a named party in the original action, and as guarantor held a contingent claim on Alfes's debt and a right to defend the Note. These same rights passed to ECMC by assignment.

Conversely, the facts of *In re Bernal*, 207 F.3d 595 (9th Cir. 2000), on which Alfes relies, are distinguishable. In *Bernal*, ECMC acquired its rights as guarantor by assignment *after* a default judgment had entered against the original guarantor. The court held that the default judgment against the original guarantor barred ECMC as assignee because "ECMC was bound by what had gone on before." *Id.* at 598.

In contrast, here ECMC acquired its rights as guarantor by assignment *before* the default judgment against PHEAA on December 9, 2005. More important, the bankruptcy court set aside the default judgment against PHEAA and entered a final judgment on the merits in favor of ECMC, holding the debt nondischargeable.

Therefore, while the default judgment against SunTrust limits ECMC's claim as assignee of the Note, it has no effect on its separate and distinct rights as guarantor. *See In re Garmhausen* 262 B.R. 217, 222–23 (Bankr. E.D.N.Y. 2001) (The "mere fact that [the guarantor] now holds both [a claim by assignment from the lender and a claim reserved as guarantor] does not transform them into one. . . . [The] guarantor is *not* bound by the default judgment entered against [the lender] on the underlying obligation."); *In re Wedell*, 329 B.R. 59, 61 (W.D. Wash. 2005) ("[The guarantor's rights] are distinct from those of the [lender] and are not automatically discharged simply because [the guarantor] also stood in the shoes of the defaulted lender.")

### 2. *Res judicata*

The doctrine of *res judicata* provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in a prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (internal quotation marks omitted). *Res judicata* is based on the following four elements:

(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Id.*

Alfes argues that the bankruptcy court erred in giving preclusive effect to its April 17, 2006 order holding the debt nondischargeable. Conversely, Alfes argues that ECMC, as SunTrust's assignee, must be bound by the November 18, 2005 default judgment against SunTrust.

Alfes's argument fails in the face of PHEAA/ECMC's separate and distinct rights as guarantor. In the second adversary proceeding, the bankruptcy court, noting the contradictory *res judicata* claims, properly held that the default judgment against SunTrust did not involve the same parties as the current action. While any claim by ECMC as SunTrust's assignee is barred by the default judgment against SunTrust, ECMC's claims as guarantor originate from PHEAA, not SunTrust. Therefore, ECMC's guaranty claim in the second adversary proceeding was not foreclosed by the default judgment against SunTrust.

In contrast, the April 17, 2006 dismissal of Alfes's claim should be given *res judicata* effect because that action involved Alfes and ECMC in its capacity as guarantor. The final decision in ECMC's favor, as the successor in interest to PHEAA, resolved all claims in the adversary proceeding and Alfes did not appeal that judgment. Therefore, the district court properly held that the judgment in ECMC's favor declaring the debt nondischargeable had binding *res judicata* effect with respect to Alfes's claims in the second adversary proceeding.

**III.**

Alfes challenges the bankruptcy court's denial of his motion to dismiss ECMC's amended complaint. He contends that the district court's determination that the amended complaint related back because it did not assert "any substantively different claim" and did not result in unfair surprise to Alfes is erroneous because the amended complaint

added the factual claim that ECMC paid the guaranty to SunTrust, thus effectively alleging a new cause of action as guarantor.

The settlement agreement between Alfes, SunTrust, and ECMC states in relevant part:

> SunTrust, ECMC, and their agents agree that any claim against Debtor in connection with the student loans, regardless of the theory of liability and regardless of whether such claim arises under the promissory notes, guaranty, or otherwise, shall be brought on or before May 17, 2010. This provision shall not be construed to waive or extend any limitation or appeal period or any defense related thereto.

Alfes argues that the contractual May 17, 2010 deadline under the settlement agreement bars ECMC's May 18 amended complaint and that, because the amended complaint asserted a new claim under a different theory, the amendment violated the settlement agreement. ECMC responds that while the settlement agreement limits the time to bring new claims, it is silent on the timing of amendments and whether the rules of civil procedure apply to allow relation back. Further, both complaints seek a declaratory judgment that Alfes's student loans were not discharged.

Federal Rule of Civil Procedure 15 applies in bankruptcy adversary proceedings. *See* Fed. R. Bankr. P. 7015. A party is allowed to amend its pleading "once as a matter of course" within twenty-one days after serving it. Fed. R. Civ. P. 15(a)(1). This rule "gives plaintiffs an absolute right to amend their complaint one time before a responsive pleading is served." *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 420 (6th Cir. 2000). Rule 15(c) provides that where the statute of limitations has run, an amended complaint will relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out" in the original pleading. *See* Fed. R. Civ. P. 15(c)(1)(B).

The bankruptcy court concluded:

> [The amended complaint] clearly relates back. It does not assert any substantively different claim, whether it states the facts more accurately is . . . subject to dispute. . . . But most importantly there are no surprises

in the amended complaint. The debtor has known of the creditor's position on this, I think it's fair to say for years.

Thus, the relevant questions on appeal are whether the May 18 amended complaint sets forth a new claim under a different theory and, if so, whether the rules of procedure can be used to allow relation back of the amended complaint.

**A.**

On the first question, the bankruptcy court did not err in determining that the original and amended complaints asserted the same substantive claims. Close analysis of the original and amended complaints reveals that the claims asserted were substantively identical.

Alfes claims that two amended provisions, ¶¶ 30 and 66, added a previously unasserted claim that PHEAA held rights as guarantor under the Note. Paragraph 30 of the original complaint alleges that on October 5, 2005, "PHEAA purchased the Note from SunTrust," whereas the amended paragraph states that "PHEAA paid SunTrust as the guarantee, and SunTrust transferred the Note to PHEAA."

Alfes's claim that ECMC's original complaint made no mention of PHEAA's payment under a guaranty disregards several other provisions in the original complaint that clearly set forth PHEAA/ECMC's status as guarantor. Paragraph 2 states that ECMC "provides specialized guarantor services . . . including the transfer of title to certain student loan accounts on which the student loan borrower has filed a bankruptcy petition." This provision was unaltered in the amended complaint. Similarly, ¶ 18, which appears as ¶ 19 in the amended complaint but remains otherwise unaltered, states that "PHEAA was the guarantor, insuring the Note under the FFELP." Thus, the original complaint sufficiently asserted PHEAA/ECMC's status as guarantor under the Note and provided Alfes with notice of ECMC's claims in that capacity.

As guarantor, PHEAA held a contingent claim against Alfes's debt, which became vested when PHEAA paid the amount outstanding, in exchange for SunTrust's assignment of the Note. Further, under the guaranty agreement with SunTrust, PHEAA

had an obligation as guarantor to pay SunTrust as guarantee the amount due on the Note in the event of bankruptcy. Thus, in the context of SunTrust and PHEAA's relationship under the guaranty agreement, it is inconsequential whether this transfer is described as a "purchase" or as a "payment as the guaranty."

Second, ¶ 66 of the amended complaint states that "Alfes still claims the default judgment against the lender SunTrust, that never held any guarantor interest in the Note . . . acted to discharge ECMC's interest in the student loans." However, rather than adding a new theory of the case, this addition merely distinguishes PHEAA/ECMC's interest as guarantor from SunTrust's interest as lender and reinforces ECMC's allegation in ¶ 1 of its amended complaint that Alfes's student loans held by ECMC had not been discharged by virtue of the bankruptcy court's April 17, 2006, order.

We also observe that ECMC asserted its separate and distinct claims as guarantor as early as January 20, 2009, in response to Alfes's motion to reopen, several months before the second adversary proceeding was initiated. ECMC's response argued that "[Alfes] ignores that PHEAA's (and ECMC's) claims as guarantors are different than their rights as assignee in their capacity as guarantors." In addition, ECMC's initial answer to Alfes's complaint in the first adversary proceeding, well before entry of the default judgment against SunTrust, stated that "[Alfes] is indebted to ECMC for educational loans made . . . by ECMC's predecessor in interest, various banks and governmental guarantors."

Thus, the bankruptcy court properly concluded that the original and amended complaints asserted the same substantive claims; that because Alfes was aware of ECMC's claims as guarantor for several years, the amended complaint contained "no surprises;" and that Alfes was not prejudiced by the amendment.

**B.**

The district court also correctly concluded that ECMC could properly avail itself of Federal Rule of Civil Procedure 15(e) given that the parties' settlement agreement states only that a claim must be "brought on or before" the contractual deadline and is

otherwise silent on whether the Federal Rules of Civil Procedure apply to allow relation back.

On appeal, Alfes argues that "[w]hile the rules may grant the *power* to file the amended complaint, [ECMC] is without the *right* to file it because that right was waived by contract." The limitations period for asserting a claim can be abridged by contract. *See Cange v. Stotler & Co.*, 826 F.2d 581, 584–85 (7th Cir. 1987) (holding that a reasonable, contracted-for limitations period that is not contrary to public policy is generally enforceable). But "[t]he relation back doctrine is based upon the principle that one who has been given notice of litigation concerning a given transaction or occurrence has been provided with all the protection that statutes of limitation are designed to afford." *Bonerb v. Richard J. Caron Found.*, 159 F.R.D. 16, 19 (W.D.N.Y. 1994) (citation omitted). Here, Alfes was aware of ECMC's claims as guarantor at least as early as January 2009.

Therefore, the bankruptcy and district courts did not err in holding that the amended complaint related back, because it did not assert "any substantively different claim" and did not result in unfair surprise to Alfes.

**IV.**

For the foregoing reasons, we agree with the determination of the bankruptcy court and **AFFIRM** the judgment of the district court.