NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0774n.06

No.  12-4296

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 20, 2013*

DEBORAH S. HUNT, Clerk

PRAM NGUYEN ex rel. United States,

     Plaintiff-Appellant,

v.

CITY OF CLEVELAND; CUYAHOGA
PORT AUTHORITY,

     Defendants-Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

_____ /

BEFORE:    CLAY, SUTTON, and GRIFFIN, Circuit Judges.

     **CLAY, Circuit Judge.**  Plaintiff Pram Nguyen has attempted several times to challenge the environmental practices of Cleveland Hopkins International Airport, jointly operated by Defendants the City of Cleveland and the Cuyahoga Port Authority.  In this case, Plaintiff alleged that Defendants failed to obtain environmental permits in violation of the Clean Air Act, 42 U.S.C. § 7661a(a), and that they falsely certified their environmental compliance to the FAA in order to receive federal funds, in violation of the False Claims Act, 31 U.S.C. § 3729(a).  The district court dismissed the complaint as barred by the related doctrines of claim and issue preclusion, concluding that all of Plaintiff's claims either had been raised or should have been raised in prior litigation.  We agree that the False Claims Act claim is barred by issue preclusion, but we find that the Clean Air Act claim is not barred by claim preclusion.  Accordingly, we **AFFIRM** the district court's decision in part, **REVERSE** in part, and **REMAND** for further proceedings.

## BACKGROUND

### A.     The First Suit: *Nguyen I*

In January 2000, Plaintiff filed a *qui tam* action under the False Claims Act against the operators of numerous American airports, including Cleveland Hopkins International Airport. *See United States ex rel. Nguyen v. City of Cleveland, Ohio, et al.*, No. 1:00CV208, 2005 WL 2416925, at *1 (N.D. Ohio Sept. 30, 2005) ("*Nguyen I*").  Plaintiff alleged that the airports had fraudulently accepted federal funds by falsely certifying compliance with the environmental laws, among them the Clean Air Act, in order to meet conditions for receiving those funds from the FAA.  *Id.* at *2.

Specifically, Plaintiff alleged that the airports' use of aircraft deicing fluids ("ADF") resulted in harmful emissions within the meaning of the Clean Air Act and that the amount of these emissions was sufficient to trigger the Act's permitting requirements.  Having failed to obtain any such permits, Plaintiff alleged that the airports were in violation of the Clean Air Act when they certified to the FAA that they were, in fact, in compliance with the environmental laws.  *Id.*  The parties conducted extensive discovery, and the district court considered scientific reports and testimony from both sides. *See id.* at *7–11.

Ultimately, in September 2005, the district court granted summary judgment to the defendants.  It held that, based on the record, no reasonable juror could have concluded that the defendants knowingly falsified their certifications of compliance with the environmental laws.  *Id.* at *12.  The only evidence of their knowledge was "Plaintiff's naked advice" and his "unpublished and, to date, largely untested conclusions as to the appropriate scientific methodology for measuring the type of air emissions at issue here." *Id.* at *11 (emphasis omitted).  With nothing more to suggest

that the airports knew their certifications to the government were false, the court granted summary judgment to the defendants and dismissed the case. *Id.* at *12.

Plaintiff filed a notice of appeal in October 2005, but not before filing a voluntary petition for bankruptcy. *See In re: Pram Nguyen*, No. 05-95756, Doc. No. 1 (Bankr. N.D. Ohio Oct. 16, 2005). Plaintiff's claim became part of the bankruptcy estate, and the bankruptcy trustee settled with the defendants for $10,100. *Id.*, Doc. No. 49. Although Plaintiff had initially objected to settling the claim, he withdrew his objection as part of the final agreement. *Id.* The agreement included a release and covenant not to sue, pursuant to which Plaintiff agreed to release the defendants from "all past, present, and future claims . . . relating to, (1) the Airports' obtaining of any funds from the United States . . . in connection with construction at the Airports' facilities, (2) the Airports' certifications that they have complied with or will comply with all applicable environmental protection laws and regulations, and (3) all claims that were or could have been asserted in the Qui Tam Actions." (Appellee's Br., App. A, at 4–5.)

## B. The Second Suit

On February 27, 2009, Plaintiff filed a complaint in the Northern District of Ohio, again alleging that Defendants (this time only the City of Cleveland and the Cuyahoga Port Authority) had violated the False Claims Act by falsely certifying their compliance with the environmental laws. In this complaint, Plaintiff raised an additional claim pursuant to the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604, this time directly asserting that Defendants were in violation of the Clean Air Act's permitting requirements, 42 U.S.C. § 7661a(a), as well as various provisions of Ohio state law. In addition to alleging that the airport's deicing activities created harmful emissions, as

he had in *Nguyen I*, Plaintiff also alleged that various other activities created emissions that would give rise to permitting requirements, including aircraft refueling, auxiliary power units, and construction dust. Defendants moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint was barred by the doctrines of claim and issue preclusion. The district court initially dismissed only some of Plaintiff's claims but, after Defendants moved for reconsideration, ultimately concluded that all of Plaintiff's claims were barred by the preclusion doctrines.

## DISCUSSION

We review *de novo* a district court's decision to dispose of a case based on principles of *res judicata*.[1] *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). When reviewing a motion to dismiss, we construe the record in the light most favorable to the non-moving party and accepts as true all well-pleaded allegations in the complaint. *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845 (6th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting

---

[1] Courts often use the term "*res judicata*" when referring to both claim and issue preclusion. As differentiated by the Supreme Court, "[i]ssue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. . . . Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984).

the motion into one for summary judgment." *Buck*, 597 F.3d at 816. As described below, we find that Plaintiff is precluded from asserting his False Claims Act claim, but he is not precluded from raising a claim under the Clean Air Act.

## I. False Claims Act

The district court found that the doctrine of issue preclusion (collateral estoppel) prevented Plaintiff from relitigating his claim under the False Claims Act. The party asserting issue preclusion, in this case Defendants, bears the burden of establishing the following elements:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Schreiber v. Philips Display Components Co.*, 580 F.3d 355, 367 (6th Cir. 2009) (citing *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007)). Plaintiff argues that the decision in *Nguyen I* does not satisfy the first, second, and fourth elements of the issue preclusion test.

First, the issue raised in this case was previously raised and actually litigated in *Nguyen I*. The parties disagree over how to characterize the focus of that decision, with Plaintiff concentrating on the state of the evidentiary record and Defendants, along with the district court below, concentrating on the airport's compliance with FAA guidelines. Neither party is exactly right, and both circumscribe the *Nguyen I* holding too narrowly. The best statement of the holding in *Nguyen I* is the following: "On this record, the Court finds that no reasonable juror could conclude that the Airports knowingly presented false data to the Government regarding the environmental effects of their deicing operations." *Nguyen I*, 2005 WL 2416925, at *12.

When the *Nugyen I* court granted summary judgment "[o]n this record," it essentially balanced the evidence that had been presented for both sides and concluded that the evidence so favored Defendants' position that no reasonable juror could find them liable for violating the False Claims Act. That calculus included the evidence presented by Plaintiff, namely the "unpublished and, to date, largely untested conclusions" of Plaintiff and his expert, as well as Plaintiff's "naked advice" to Defendants regarding their emissions. *See id.* at *11. The court's calculus also included a number of factors that strongly favored Defendants, including the fact that no airport in the country calculated emissions the way that Plaintiff proposed; the studies which supported Defendants' position were facially reliable; no government agency had filed an enforcement action against an airport in relation to deicing activities; and the airports' emissions data was provided by the FAA itself, the very agency Defendants were accused of defrauding. *Id.*

The balancing of these factors formed the basis of the *Nguyen I* court's holding that no reasonable juror could find Defendants liable for violating the False Claims Act. Plaintiff's attempt to distinguish the issue he raises now from the court's conclusion in *Nugyen I* is ultimately unavailing. He argues that the conduct at issue in this case occurred after the conduct at issue in *Nguyen I*, but we can discern no reason why the different time period is relevant to the issue he seeks to relitigate. The precise issue in the prior case was Defendants' knowledge given the facts in the record, and the time period of the underlying conduct is not material to that issue. *See* Restatement (Second) of Judgments § 27 cmt. c (1982) (stating that in some instances where different time periods are alleged, "the overlap is so substantial that preclusion is plainly appropriate").

Plaintiff next contends that he has alleged additional facts which distinguish this case from *Nguyen I*, including the evidence he introduced during the prior litigation and information concerning non-ADF emissions. However, these additional facts were either specifically considered and rejected by the court in *Nguyen I*, or they do not bear on the critical question of Defendants' knowledge. Plaintiff would have had to allege that Defendants were aware of information that was not before the *Nguyen I* court, that the FAA's emission guidance had changed in the interim, or that some airports had begun using a different method for calculating their emissions. Although the prior court discussed only ADF emissions, its holding turned on the fact that the only possible source of Defendants' knowledge was Plaintiff himself. *See Nguyen I*, 2005 WL 2416925, at \*11. In this case, Plaintiff's complaint alleges nothing more. Even accepting all facts alleged in the complaint as true, as we must at the motion to dismiss stage, Plaintiff provides no additional basis to conclude that Defendants had knowledge of any environmental violations.

Second, the issue adjudicated in *Nguyen I* was necessary to that court's judgment. "A determination ranks as necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009) (citing 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4421 (2d ed. 2002)). The essence of the decision in *Nguyen I* was that no reasonable juror could conclude that Defendants knowingly falsified environmental certifications based on the state of the record. That determination, on a materially identical record, is the determination that Plaintiff asked the district court to make anew in this case. *Nguyen I*'s determination of that issue was not an extraneous bit of dicta; rather, it was the core of its holding. The grant of summary

judgment in *Nguyen I* hinged on the weighing of the evidence of Defendants' knowledge—a calculus that has not meaningfully changed in the interim.

Third, Plaintiff had a full and fair opportunity to litigate the issue. No one set of facts or circumstances is determinative of whether a party has been given a full and fair opportunity to litigate an issue. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333–34 (1971). "In the end, [the] decision will necessarily rest on the . . . court's sense of justice and equity." *Id.* at 334. Plaintiff argues that because his appeal in *Nguyen I* was settled as part of his bankruptcy proceeding, he was denied a full and fair opportunity to litigate the issues raised in that case. Under certain circumstances, the absence of an opportunity to have an appellate court review a lower court's decision can foreclose the application of the doctrine of issue preclusion. The Restatement of Judgments explains that the relitigation of an issue is not barred when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." Restatement (Second) of Judgments § 28(1); *see also Standefer v. United States*, 447 U.S. 10, 23 (1980) ("Under contemporary principles of collateral estoppel, this factor [ability to appeal] strongly militates against giving . . . preclusive effect.").

However, the ability to appeal is not a necessary prerequisite. *See id.* at 23 n. 18 ("This is not to suggest that the availability of appellate review is always an essential predicate of estoppel."). Plaintiff was not denied the opportunity to appeal by operation of law or for any other reason. It was Plaintiff who availed himself of the protection of the bankruptcy court, and by doing so he subjected all his assets, including the pending appeal, to the bankruptcy process. Plaintiff, through his attorney, stipulated to the settlement reached between the bankruptcy trustee and Defendants. *See*

*In re: Pram Nguyen*, No. 05-95756, Doc. No. 49, at 2 (Bankr. N.D. Ohio Aug. 18, 2006) ("The Debtor hereby . . . waives any and all right of appeal.") There is no indication that the bankruptcy trustee settled the claim in bad faith or that she drastically undervalued the claim. Under these circumstances, we conclude that Plaintiff was not denied a full and fair opportunity to litigate the issue decided in *Nguyen I*. Because each of the elements of the issue preclusion test are satisfied, Plaintiff is barred from relitigating his False Claims Act claim.

## II.    Clean Air Act

The district court found that Plaintiff's Clean Air Act claim was barred by the doctrine of claim preclusion. "The doctrine of res judicata [claim preclusion] provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in a prior action." *In re Alfes*, 709 F.3d 631, 638 (6th Cir. 2013) (internal quotation marks omitted). Claim preclusion should be employed to bar a claim when the following four elements are satisfied:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Id*. Plaintiff argues that because the conduct he challenges occurred after *Nguyen I* was decided, he could not have raised his Clean Air Act claim in the first suit and, for the same reason, that the two causes of action are not identical.

While *Nguyen I* dealt with Defendants' knowledge of their supposed noncompliance with the environmental laws when they certified as much to the FAA, Plaintiff now alleges directly that Defendants have violated the Clean Air Act by failing to comply with its permitting requirements.

The district court found that Plaintiff could have and should have brought a direct Clean Air Act claim in *Nguyen I* and that such a claim was merely a different legal theory to recover for the same allegedly wrongful conduct. These conclusions implicate the third and fourth elements of the claim preclusion test, which in practice require much the same inquiry: whether the second action seeks remedies "with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose." Restatement (Second) of Judgments § 24(1). If the two claims arose out of the same transaction, they share an "identity," and Plaintiff should have raised both in the first suit.

We must determine whether Plaintiff's Clean Air Act claim arises from the same "transaction" as his claim under the False Claims Act that was adjudicated in *Nguyen I*. If distinct causes of action or legal theories are based on a "common nucleus of operative facts," they must be brought in the same suit. *Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 362 (6th Cir. 2003) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Understandably, this rule is intended to promote judicial economy by forcing plaintiffs to raise all claims arising from one event in a single complaint. *See* Restatement (Second) of Judgments § 24 cmt. c ("A single transaction ordinarily gives rise to but one claim by one person against another.").

Ordinarily, the "transaction" that gives rise to a cause of action will be clearly delineated. A car accident victim, for example, must bring all tort claims related to the accident in a single suit or be barred from raising them later. However, when a plaintiff alleges an ongoing course of harmful conduct, as with a nuisance or pattern of harassment, the task of pinpointing the transaction becomes

10

more challenging. On the one hand, a plaintiff should not be permitted to repeatedly challenge the same conduct over and over, but neither should a defendant have perpetual immunity from suit based on a single adjudication that may have ended in settlement or a decision in the plaintiff's favor. A successful plaintiff should not be forever barred from asserting new claims based on continuous wrongful conduct, even if that conduct is identical to the subject of a prior suit. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 750 (6th Cir. 2002) (finding that the doctrine of claim preclusion "should not be read to preclude the victim of ongoing retaliation from filing multiple suits").

The solution to this dilemma can be found in the interplay between the doctrines of claim and issue preclusion. If a plaintiff sues a defendant more than once based on an ongoing course of conduct, the doctrine of claim preclusion will typically not prevent the plaintiff from asserting a cause of action that arose after the first suit was decided. *See Cellar Door Prods., Inc. of Mich v. Kay*, 897 F.2d 1375, 1378 (6th Cir. 1990). Because it did not yet exist, such a cause of action literally could not have been brought in the first suit. However, once a court actually litigates the merits of an issue, the doctrine of issue preclusion will prevent a plaintiff from relitigating the issue in a subsequent suit. *See Dubuc*, 312 F.3d at 751 ("When . . . the defendant continu[es] on the same course of conduct, which has previously been found by a court to be proper, a subsequent court must conclude that the plaintiff is simply trying to relitigate the same claim.").

The Supreme Court applied these principles in *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955). The Court considered a situation in which a plaintiff brought an antitrust action against a distributor of movie posters and related accessories. *Id.* at 323–24. That suit was settled out of court, and the action was dismissed with prejudice. *Id.* at 324. Several years later, the same

11

plaintiff filed a second action, alleging that the distributor violated the antitrust laws for much the same conduct after the first suit was dismissed. *Id.* at 325. The Court held that the second suit was not barred by the doctrine of claim preclusion, stating:

> That both suits involved "essentially the same course of wrongful conduct" is not decisive. Such a course of conduct—for example, an abatable nuisance—may frequently give rise to more than a single cause of action. . . . While the [earlier] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.

*Id.* at 327–28. When allegedly unlawful conduct occurs after a case has been decided, and that conduct gives rise to a new cause of action, *Lawlor* clearly holds that a new suit based on that cause of action is not barred by the first suit. *See Cellar Door Prods.*, 897 F.2d at 1378 (finding, based on *Lawlor*, that a second antitrust action was not barred by a prior decision because the complained-of conduct occurred after the first suit and gave rise to a new cause of action).

Like violations of the antitrust laws, each act of operating without the required permit gives rise to a new and discrete cause of action under the Clean Air Act. In the context of this case, the Act does not merely forbid the initial failure to obtain the required permit. Section 7661a also makes it "unlawful for any person . . . *to operate* [a source] except in compliance with a permit issued by a permitting authority under this subchapter." 42 U.S.C. § 7661a(a) (emphasis added); *see also* 42 U.S.C. § 7413(b)(2) (authorizing civil penalties of $25,000 per day for violations of this permitting requirement). Plaintiff's complaint alleges not only that Defendants failed to obtain the necessary emissions permits but also that they have operated without the necessary permits to the present day. Each of these alleged acts of operation gives rise to a new cause of action, some of which arose after *Nguyen I* was decided.

12

The conduct that forms the basis for Plaintiff's Clean Air Act claim is alleged to have occurred continuously until he filed his complaint in 2009, well after *Nguyen I* was decided in 2005. Therefore, because Plaintiff has asserted causes of action that arose after the decision in *Nguyen I*, the doctrine of claim preclusion does not bar the consideration of those claims. However, for any Clean Air Act violations that occurred before or during the pendency of *Nguyen I*, Plaintiff should have challenged them in that suit.[2] The wrongful conduct alleged in *Nguyen I* necessarily included any and all of Defendants' violations of the environmental laws, including the Clean Air Act. *See Nguyen I*, 2005 WL 2416925, at *11. But Plaintiff is free to challenge conduct that occurred after the prior case concluded.

If individuals like Plaintiff were forever barred from asserting claims based on conduct that occurs after a prior suit is decided, defendants could continue a course of unlawful conduct undeterred. *See Lawlor*, 349 U.S. at 329 (noting that such a policy "would in effect confer on [defendants] a partial immunity from civil liability for future violations"). If wrongful conduct persists, plaintiffs can file successive complaints. *See Dubuc*, 312 F.3d at 750. But plaintiffs cannot continue to bring the same claims again and again. Should the district court on remand conclude that Defendants have not, in fact, violated the Clean Air Act by failing to obtain permits, Plaintiff would be barred by the doctrine of *issue* preclusion from relitigating that issue, even if Defendants continue on the same course of conduct. *See id.* at 751. However, no court has ever evaluated Defendants'

---

[2] Plaintiff should have brought all claims under the Clean Air Act which had accrued to that point, including those based on non-ADF emissions, of which he was clearly aware by virtue of his self-professed expertise in air pollution and airport emissions. Plaintiff's assertion that he was aware of these emissions but did not know that they violated the Clean Air Act is implausible given Plaintiff's clearly displayed understanding of the statute's requirements in *Nguyen I*.

conduct under the Clean Air Act, and Plaintiff is thus not precluded from litigating the issue.

Plaintiff ought not receive a second bite at the apple, but he must be permitted a first bite.[3]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision regarding Plaintiff's False Claims Act claims, **REVERSE** its decision regarding Plaintiff's Clean Air Act claims, and **REMAND** for further proceedings consistent with this opinion.

---

[3] In their appellate brief's statement of facts, Defendants mention in passing the Release and Covenant Not To Sue that accompanied the settlement of the *Nguyen I* appeal during Plaintiff's bankruptcy. However, the appellate brief does not, and Defendants in the district court did not, raise the settlement agreement as an independent basis for dismissing Plaintiff's suit. We therefore decline to reach the issue. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006); *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 308 F.3d 523, 528 n.1 (6th Cir. 2002).