*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0024p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: GAETANO T. RIZZO,

　　　　　　　　　　　　　　*Debtor.*

—————————————————————————

GAETANO T. RIZZO,

　　　　　　　　　　　　　　*Appellant*,

　　　*v.*

STATE OF MICHIGAN, DEPARTMENT OF
TREASURY,

　　　　　　　　　　　　　　*Appellee.*

No. 13-1230

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-14179—David M. Lawson, District Judge.

Argued: January 23, 2014

Decided and Filed: February 4, 2014

Before: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Leon N. Mayer, SCHAFER & WEINER PLLC, Bloomfield Hills, Michigan, for Appellant. Allison M. Dietz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Detroit, Michigan, for Appellee. **ON BRIEF:** Leon N. Mayer, SCHAFER & WEINER, Bloomfield Hills, Michigan, for Appellant. Allison Michele Dietz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Detroit, Michigan, for Appellee.

1

—————————————

**OPINION**

—————————————

GRIFFIN, Circuit Judge.   Despite the fact that Gaetano Rizzo filed for bankruptcy protection and received a general discharge, the Michigan Department of Treasury ("Treasury") persisted in its claim that Rizzo owed Treasury more than $70,000 in unpaid Michigan Single Business Tax ("SBT").  According to Treasury, Rizzo was personally liable for the unpaid tax because a company for which he had been the responsible corporate officer had failed to pay it, thereby triggering Rizzo's obligation to pay under applicable state statutes.  Treasury argues that Rizzo's personal liability for the tax deficiency is nondischargeable in bankruptcy because it is a debt for an "excise tax," as defined in 11 U.S.C. § 507(a)(8)(E).

Rizzo concedes that the unpaid SBT is an "excise tax" deficiency as to the now-defunct company of which he was formerly an officer, and he also does not dispute that he was personally liable for the company's unpaid tax under the relevant state statutes. Nevertheless, Rizzo argues that, because he had only derivative—rather than primary—liability for the unpaid SBT, his obligation to pay it is not a debt for an "excise tax" and is consequently not excepted from discharge under § 507(a)(8)(E).  Both the bankruptcy court and the district court disagreed with Rizzo and dismissed his adversary action.  Because Michigan's tax statutes simply confer derivative liability upon Rizzo for precisely the same excise tax deficiency that was assessed against the company, we affirm.

I.

Rizzo filed a voluntary petition for personal Chapter 7 bankruptcy in 2011 and received a general discharge later that year.  Despite his discharge, Treasury sent Rizzo several collection letters demanding that he pay $72,286.39 in delinquent SBT that had been assessed against Jefferson Beach Properties, LLC (the "Company"), of which Rizzo had been an officer.

In response to Treasury's collection efforts, Rizzo filed an adversary action in the bankruptcy court, contending that his personal liability for the Company's unpaid SBT had been discharged in bankruptcy. Treasury moved to dismiss Rizzo's adversary action, claiming that his liability for the SBT deficiency is a nondischargeable "excise tax" debt under 11 U.S.C. § 507(a)(8)(E). The bankruptcy court agreed with Treasury and dismissed the case, ruling that Rizzo's personal liability for the unpaid SBT was nondischargeable in bankruptcy.

Rizzo appealed to the district court, but it affirmed, reaching the same conclusion as the bankruptcy court and specifically concluding that Rizzo's liability for the SBT deficiency was a debt for an "excise tax," despite the fact that he was only derivatively liable for it. Rizzo now appeals.

## II.

In appeals that originate in bankruptcy courts, we "directly review the bankruptcy court's decision rather than the district court's review of the bankruptcy decision." *In re Alfes*, 709 F.3d 631, 636 (6th Cir. 2013) (citation omitted). The bankruptcy court's factual findings are reviewed for clear error and its conclusions of law are reviewed de novo. *Id.* Rizzo's appeal presents a pure question of law: whether Rizzo's personal liability for the Company's unpaid SBT is a debt for an "excise tax," where his liability for the tax deficiency is derivative under state taxation statutes. We conclude that it is.

## A.

On the underlying issues, the parties agree. A bankruptcy discharge "does not discharge an individual debtor from any debt . . . for a tax or a customs duty . . . of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title." 11 U.S.C. § 523(a)(1)(A). Section 507(a)(8)(E), in turn, defines one such type of nondischargeable tax debt: "unsecured claims of governmental units," including "an excise tax on . . . a transaction" occurring within a three-year limitations period. 11 U.S.C. § 507(a)(8)(E).

Whether a given state exaction is a nondischargeable "excise tax" under the Bankruptcy Code is a matter of federal law. *In re Suburban Motor Freight, Inc. (Suburban II)*, 36 F.3d 484, 487 (6th Cir. 1994); *see also City of N.Y. v. Feiring*, 313 U.S. 283, 285 (1941). The court makes this determination by engaging in a "functional examination" of the applicable statutory scheme to determine whether it falls within the federal statutory definition. *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996). In doing so, the statutory labels of the exaction are not dispositive; the court must instead evaluate the statute's "actual effects to determine whether it functions as either a tax or else as some different kind of obligation." *Boston Reg'l Med. Ctr., Inc. v. Mass. Div. of Health Care Fin. & Policy*, 365 F.3d 51, 58 (1st Cir. 2004) (internal quotation marks omitted); *see Suburban II*, 36 F.3d at 487–89.

Rizzo concedes that Michigan's SBT is an "excise tax" as to the Company. *Cf. Quiroz v. Mich. Dep't of Treasury*, 472 B.R. 434, 437 (E.D. Mich. 2012) (citing *Trinova Corp. v. Mich. Dep't of Treasury*, 498 U.S. 358, 362 (1991) (describing the "value added" concept of the SBT)).

Nor does Rizzo dispute that he was personally liable for the Company's unpaid SBT as a responsible corporate officer, as provided for in Mich. Comp. Laws § 205.27a(5). Section 205 of the Michigan Compiled Laws is headed, "Revenue Collection by Department of Treasury," and § 205.27a(5) provides that certain corporate officers are personally liable for the unpaid tax debts of their business organizations:

> (5) If a corporation, limited liability company, limited liability partnership, partnership, or limited partnership liable for taxes administered under this act fails for any reason to file the required returns or to pay the tax due, any of its officers, members, managers, or partners who the department determines . . . have control or supervision of, or responsibility for, making the returns or payments is personally liable for the failure. . . .  The dissolution of a corporation, limited liability company, limited liability partnership, partnership, or limited partnership does not discharge an officer's, member's, manager's, or partner's liability for a prior failure of the corporation, limited liability company, limited liability partnership, partnership, or limited partnership to make

a return or remit the tax due.  The sum due for a liability may be assessed and collected under the related sections of this act.

Mich. Comp. Laws § 205.27a(5).

B.

Although Rizzo admits that the unpaid SBT is a nondischargeable "excise tax" debt for purposes of § 507(a)(8)(E) as to the Company, he contends that his personal liability for the Company's SBT tax deficiency is not a debt for an "excise tax."  Because the term "excise tax" is not defined in the Bankruptcy Code, courts determining its meaning have typically resorted to dictionary definitions.  *See, e.g.*, *In re Lorber Indus. of Calif.*, 564 F.3d 1098, 1101 (9th Cir. 2009); *Boston Reg'l Med. Ctr.*, 365 F.3d at 57 (noting that "the legislative history [is not] informative on what the term means").  The consensus is that "excise tax" as used in § 507(a)(8)(E) generally refers to "[a] tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)."  Black's Law Dictionary 646 (9th ed. 2009).  *See Boston Reg'l Med. Ctr.*, 365 F.3d at 65; *In re George*, 361 F.3d 1157, 1163 (9th Cir. 2004); *In re DeRoche*, 287 F.3d 751, 755 (9th Cir. 2002); *In re Groetken*, 843 F.2d 1007, 1013 (7th Cir. 1988).  Typically, an excise tax is imposed upon "a discrete act by the person or entity being taxed," *DeRoche*, 287 F.3d at 755, in contrast with, for example, a tax on income.  *George*, 361 F.3d at 1163.  Still, an "excise" has a "broad definition," *Boston Reg'l Med. Ctr.*, 365 F.3d at 65, essentially encompassing any tax that is "indirectly assessed," *In re Suburban Motor Freight, Inc. (Suburban I)*, 998 F.2d 338, 340 n.3 (6th Cir. 1993); that is, any tax "that is not directly imposed upon people or property" but is instead "imposed upon a particular use of property" or upon the exercise of a "right or privilege."  *In re Nat'l Steel Corp.*, 321 B.R. 901, 909 (Bankr. N.D. Ill. 2005) (quotation marks and citations omitted); *see also New Neighborhoods, Inc. v. W. Va. Workers' Comp. Fund*, 886 F.2d 714, 719 (4th Cir. 1989).

Rizzo contends that his personal debt to Treasury is not an "excise tax" debt because it did not arise from his own participation in any sort of taxable transaction.

Instead, he argues, Treasury's claim against Rizzo arose solely from his status as a responsible corporate officer and therefore does not function as an excise.

In support of this position, Rizzo claims that the term "excise tax" as used in § 507(a)(8)(E) is ambiguous. He is incorrect. "Excise tax" is susceptible to a definitive meaning, albeit a broad one. *See Suburban I*, 998 F.2d at 340 n.3. And under the authorities that Rizzo himself points to, the identity of the ultimate obligor does not inhere in the definition of an "excise." *See* Black's Law Dictionary 646 (9th ed. 2009). Because whether a tax is an "excise" or not does not depend upon who is required to pay it, section 507(a)(8)(E)'s reference to "excise tax" denotes only the nature of the assessment, not who is ultimately required to pay the assessed funds. *See, e.g.*, *United States v. Galletti*, 541 U.S. 114, 123 (2004) ("Under a proper understanding of the function and nature of an assessment, it is clear that it is *the tax* that is assessed, not the taxpayer.").

Further, Rizzo's argument that Treasury's claim against him does not itself function as an excise is beside the point. Rizzo's position improperly neglects the fact that sections 523(a)(1)(A) and 507(a)(8)(E) permit a state to pursue "unsecured claims" for excise tax deficiencies without limiting recovery of the debt to primarily liable parties. The statutes do not preclude a state from seeking post-discharge payment on an excise tax deficiency from a party that was not initially subject to the excise.[1]

As a result, the plain language of § 507(a)(8)(E) dooms Rizzo's argument unless Michigan's responsible-corporate-officer statute somehow imposes an obligation upon him that is of a different nature than the Company's duty to pay the excise tax deficiency that was assessed against it by Treasury. And it clearly does not: the statute does not create any obligations running from Rizzo to the Company, but simply makes Rizzo derivatively liable for the very same tax deficiency that was assessed against the

---

[1]Rizzo is incorrect that the linguistic difference between § 507(a)(8)(E) and subsection (a)(8)(C)—which excludes taxes "required to be collected or withheld *and for which the debtor is liable in whatever capacity*"—matters. *Id.* (emphasis added). This portion of subsection (a)(8)(C) simply codifies what the Supreme Court had already held in *United States v. Sotelo*, 436 U.S. 268 (1978): that, even in the absence of such statutory language, a debtor's derivative liability for corporate taxes is nondischargeable in bankruptcy. *Id.* at 274–75, 278–81.

Company.  *Cf. CF & I Fabricators*, 518 U.S. at 224 (requiring a "functional examination" of the pertinent statutory scheme to determine its nature); *Groetken*, 843 F.2d at 1013 (in applying the Bankruptcy Code's provisions, "the federal courts look to state law to determine the exact nature of a person's rights and obligations under state law.").

As explained by the Michigan state courts, a tax deficiency like the one at issue is assessed only against the corporate entity that is primarily liable for it. *See Livingstone v. Dep't of Treasury*, 456 N.W.2d 684, 691–92 (Mich. 1990).  The Michigan authorities are crystal clear: the tax deficiency for which the responsible corporate officers are derivatively liable under Mich. Comp. Laws § 205.27a(5) is the *same tax deficiency* that was assessed against the corporate entity and for which the corporate entity was primarily liable.  *See Livingstone*, 456 N.W.2d at 688–89, 695 (rejecting the theory that corporate officer liability for unpaid corporate tax is a "separate and distinct" liability from the corporation's liability for the unpaid tax); *Keith v. Dep't of Treasury*, 418 N.W.2d 691, 693 (Mich. Ct. App. 1987) (noting that the responsible corporate officer statutes permit Treasury "to hold an individual personally liable for a corporation's tax liability").  That is why the tax deficiency does not need to be assessed against the individual corporate officers.  *See Livingstone*, 456 N.W.2d at 694–95; *see also Keith*, 418 N.W.2d at 694 (noting that corporate officers may not challenge the amount of the tax deficiency if they had not done so on behalf of the corporation).  As *Livingstone* put it, "The transposition of a tax debt onto a derivatively liable party, irrespective of the terminology used, is an ancillary, ministerial step in the collection process, created, apparently in light of the Legislature's recognition of the need to insure the payment, collection or satisfaction of tax deficiencies 'assessed' against corporate tax actors."  456 N.W.2d at 694 (footnote and emphasis omitted).[2]

---

[2]This principle is not at all alien to the federal system, as federal tax obligations have been interpreted in an identical manner.  *See Galletti*, 541 U.S. at 123 (holding that a derivatively liable corporate officer need not be separately assessed because "[t]he consequences of the assessment . . . attach to the tax debt without reference to the special circumstances of the secondarily liable parties."); *United States v. Holmes*, 727 F.3d 1230, 1235 (10th Cir. 2013) (same).  *See also Washington v. United States*, 460 U.S. 536, 544 n.9 (1983) (observing that state "taxing scheme[s]" may "switch[ ] the incidence of the tax from one party to a transaction to another when the party that would ordinarily be taxed is immune.").

In other words, § 205.27a(5) does not impose an obligation upon Rizzo that is any different than that imposed upon the Company. Although Rizzo seems to argue that § 205.27a(5) creates obligations between himself and the Company such that his liability arises from an obligation to the Company rather than from Treasury's assessment of an excise tax, he misperceives the operation of the statute. Section 205.27a(5) is simply a portion of the state taxation scheme that functionally pierces the corporate veil, imposing upon Rizzo personal liability for precisely the same tax deficiency—the *excise* tax deficiency—for which the Company was primarily liable. The mere fact that Michigan's taxation statutes hold Rizzo derivatively liable for the Company's unpaid excise tax does not mean that he is liable for something other than unpaid excise tax.[3] Rizzo's liability for the excise tax deficiency is, as a result, nondischargeable under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(E).

III.

For these reasons, we affirm.

---

[3]Rizzo's case is distinguishable from a hypothetical example (to which he alludes on brief) where a party simply guarantees someone else's tax debt by contract. In that case, if the guarantor went bankrupt, the guarantor's liability to the debtor on the contract would be dischargeable notwithstanding the fact that the underlying obligation was a tax debt, given that the guarantor's liability had arisen under the contract instead of under the derivative liability provisions of the statutory taxation scheme.